### THE EVA D. ROSE.

#### (Circuit Court of Appeals, Fourth Circuit. November 5, 1908.)

#### No. 751.

1. ADMIRALTY (§ 93*)—DECREE—OPENING.

A court of admiralty has power, on seasonable application therefor, to reopen a decree entered under a misapprehension of the facts or on improper evidence.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. § 674; Dec. Dig. § 93.*]

2. ADMIRALTY (§ 118*)—COSTS—POWER TO AWARD.

The awarding or withholding of costs in admiralty is a matter in the discretion of the court, which is not subject to review where that is the sole question involved.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. § 764; Dec. Dig. § 118.*]

Appeal from the District Court of the United States for the Eastern District of North Carolina, at Newbern.

For opinion below, see 153 Fed. 912.

The appellant, master of the schooner Eva D. Rose, undertook to transport upon said vessel from the port of Baltimore, Md., to the appellees at Stonewall, N. C., part of a cargo of merchandise, and, on the same voyage, certain other merchandise forming part of said cargo, shipped from Norfolk, Va. While en route from Norfolk, at Maw Point, near the mouth of Bay river, by reason of the alleged negligence and carelessness of the libelant, the vessel ran aground, and it became necessary to jettison part of the cargo, and other portions were,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by agreement, taken off the schooner by the appellees. Upon being floated, she started on her journey, with the understanding that the residue of the cargo was to be carried to Newbern, and placed in a bonded warehouse until certain controversies which had arisen between the master of the schooner and the appellees respecting the freight money and cargo could be settled. Instead of proceeding to Newbern, the vessel proceeded to return to Baltimore, for the purpose, now alleged, of taking the residue of the cargo back to the consignors; and on that return voyage she again ran aground at Ocracoke Inlet, whereupon the libel was filed for the recovery of the cargo, and for damages received by reason of the loss incident to the jettison, and failure to deliver the cargo. The vessel with the cargo thereon was taken possession of by the marshal on the 25th of September, 1906, and the appellant appeared and made claim for the vessel on the 10th of October, 1906. On the same day answer was duly filed to the libel, and on the 26th day of October the cause was referred to George Green, as examiner, for the purpose of taking testimony and reporting the same to the court. The master duly made his report on the 16th of November, and returned the evidence, and thereupon, on the 19th day of November, a consent order was entered authorizing the marshal to deliver to the possession of the consignees, the merchandise on the vessel, and to surrender the vessel to the claimant, upon his giving bond in the penalty of $750. The bond, it seems, was not given, and the vessel remained in the custody of the marshal. On February 9, 1907, the lower court filed an opinion and decree in the cause, which in effect decided that by reason of the receipt of the goods by the libelant, and the dealings between the parties respecting the same, the only two questions undetermined were whether there was a shortage in the delivery of the cargo as called for by the bills of lading, and the amount due the seamen who had intervened in the cause; that there was no satisfactory proof before the court as to the shortage, and that the seamen should be paid; and accordingly gave judgment in favor of the seamen, dismissed the libel, and directed that each party, other than the seamen, should pay their own costs. Subsequently, on the 14th day of February, 1907, the appellant filed a petition asking that the decree be reopened as to the question of the seamen's wages, and on the same day an order was entered reciting that the amount decreed in favor of the seamen having been paid into court, with the costs, that the vessel should be released to the master; and on the same day the vessel was so released. On the 18th of February the court entered an order reciting that, "It appearing to the court that this cause was decided under a misapprehension of some of the facts, upon papers improperly filed after argument, and the master, W. C. Warren, files a petition to reopen the case as to the claim of the seamen for wages, and the libelants asking that the cause be further heard as to the receipt and discharge referred to as signed 26th day of November, 1906, it is ordered that the cause be reopened for further hearing as to the matters heretofore referred to, and any error in the opinion and decree herein filed;" and such hearing was set for Friday, February 22d. On that day a supplemental opinion and decree was filed in the cause, in which the court considered the effect of the agreement of the 26th day of November, 1906, which it seems had not theretofore been before the court, and modified the court's former ruling to the extent of placing the entire cost upon the respondent in the lower court, the appellant here, from which decree this appeal was taken.

Robert M. Hughes, Jr. (Hughes & Little, on the briefs), for appellant.

Floyd Hughes, for appellees.

Before PRITCHARD, Circuit Judge, and WADDILL and BOYD, District Judges.

WADDILL, District Judge (after stating the facts as above). From the foregoing statement of facts, it is clearly seen that the only question before this court is one of costs. The libelants having by agree-

ment, after filing the libel, received the cargo attached, no decree in their favor was necessary. The court decided adversely to their claim for shortage of cargo, directed certain seamen to be paid, and divided the costs. Manifestly the court had the right to do this, if that was its judgment of what was right in the premises, and from what was done the libelants did not appeal. Subsequently, and within a few days, the case was reopened, upon a petition filed by respondent, and, as the court says, at the instance of both parties, and in a short time—within 16 days of the original hearing—a decision was rendered upon the case as reopened.

The court, of its own motion, could have ordered the reopening of the case, where it is recited that "the former decree was entered under a misapprehension as to some of the facts, and upon papers improperly filed." Such authority would seem to be undoubted. This would be true of any court, certainly during the term at which the judgment was rendered, and doubtless, on appropriate pleadings, after the term; but in a court of admiralty, which is deemed always open (section 574, Rev. St. [U. S. Comp. St. 1901, p. 475]), there can be no question of the authority to do so, upon application seasonably made (The Vaderland [D. C.] 19 Fed. 527; Cohen on Admiralty, 279; Benedict's Admiralty, § 548).

The giving or withholding costs is a matter in the discretion of the court (Benedict's Admir. § 550), and one which is not subject to review, where that is the sole question involved. Dubois v. Kirk, 158 U. S. 58, 15 Sup. Ct. 729, 39 L. Ed. 895; Wright v. Gorman-Wright Co., 152 Fed. 408, 81 C. C. A. 534; the latter being a recent decision of this court.

Counsel for appellant refer to the case of Kell v. Trenchard, 146 Fed. 245, 76 C. C. A. 611, also a decision of this court, as containing a contrary doctrine; but a careful review of that case will be found not to support the view contended for. That case turned upon whether certain expenses of a receiver were meant to be covered by a decree of this court, awarding costs.

The controversy in this case probably arises because the amount of costs involved, $1,030.52, is undoubtedly heavy. But it will be found that the larger items of the bill, with the exception of $120.95, the examiner's fee, which from the amount of testimony taken is reasonable, consists of one item of wharfage, $304; three caretakers, $154.40, $136, and $28 respectively; appellant's witnesses alone cost $87.20. The item for wharfage and watchmen arose almost entirely from the failure of the appellant, respondent below, to bond the vessel, which he had authority to do, and as appears from this record was able to do; and while it may have been best for the court to have sold the property pending the litigation, because expensive to keep, no such motion seems to have been made, and certainly the appellant is not in a position to complain of any failure in this regard, since the master had secured permission to give the bond and procure the release of the vessel, and neglected to do so. The suggestion was made in argument that the bond was not given because appellant hoped to secure damages for the detention of his vessel. That phase of the case need

not be considered, though it is a fact that in the answer filed as early as the 10th of October, 1906, a claim of $150 was made for damages, and $25 per day for demurrage or detention.

For the reasons herein stated, the decree of the lower court will be affirmed.