FOSTER v. COMPAGNIE FRANÇAISE DE NAVIGATION À VAPEUR.

(District Court, E. D. New York. November 22, 1916.)

1. SHIPPING ⊜⇒163—CARRIAGE OF PASSENGERS—BREACH OF CONTRACT—DUTY TO REFUND PASSAGE MONEY.

A moratorium or prohibition against withdrawal of bank accounts in a foreign country is not a defense to an action by a passenger in the United States for breach of duty to refund passage money in the foreign country, where it does not appear that it rendered performance of the duty impossible, but merely inconvenient.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 530–532; Dec. Dig. ⊜⇒163.]

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. Shipping ☞163—Carriage of Passengers—Breach of Contract—Lia-
   bility for Damages.

   The purchaser of a steamship ticket for passage from a foreign coun-
   try runs the risk of a declaration of war, and cannot recover damages
   for breach of the contract resulting from such a declaration and conse-
   quent action by the foreign government, which rendered performance by
   the carrier impossible, particularly where it is exempted from such lia-
   bility by the terms of the ticket.

   [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 530–532; Dec.
   Dig. ☞163.]

In Admiralty. Suit by Roger Foster against the Compagnie Fran-
çaise de Navigation à Vapeur, Cyprien Fabre et Cie. Decree for libel-
ant.

See, also, 219 Fed. 351.

Jacob J. Aronson, of New York City, for libelant.

Butler, Brown, Wyckoff & Campbell, of New York City (Homer
L. Loomis, of New York City, of counsel), for respondent.

CHATFIELD, District Judge. The libelant will be allowed to re-
cover the sum representing, in New York (at which point the Fabre
Line sought to refund the passage money), the amount which the pas-
senger insisted should be given him in Marseilles, where he wished
to use it. The rate of exchange has nothing to do with this matter.
The passenger has saved exchange by coming to New York. Libelant
may recover 400.60 francs, or $80.12, with interest from August 3,
1914, and also the sum of $16.50, with interest from August 11, 1914.
The latter amount represents the money expended by him in obtain-
ing cash at Barcelona, which actually took the place of that withheld
by the Fabre Line.

[1] The so-called moratorium or prohibition against withdrawal
of bank accounts is not a sufficient defense to an action in the United
States for breach of duty to refund in Marseilles the passage money
in question. Even though this so-called moratorium proved a hin-
drance or annoyance to the Fabre Line, it does not appear that it ren-
dered the performance of its obligation impossible.

[2] The other items of damage claimed by the libelant, including
expenses at Marseilles between August 10th (the intended date of sail-
ing) and August 22d, when the passenger went to Barcelona, the fare
to Barcelona, and the passage money from there to New York upon
a ship provided by the United States government, as well as the loss
occasioned by delay in arrival at New York, are not within the lia-
bility of the defendant, without regard to the conditions of the ticket
which the passenger obtained in Marseilles on July 23d, for his pas-
sage by the Madonna from that port upon the 10th of August.

The declaration of war, accompanied by mobilization of members
of the crew, the restraint upon sailing of boats that might be needed
by the French government, and the constructive seizure of the supply
of coal, are matters of which some were within the general knowl-
edge of the court, and of which cognizance could be taken without
further proof; but they have been substantially proven by the deposi-
tions in this case. They happen to be covered by the provisions of

the ticket, and the attention of the court has been called to no case absolving the passenger from the effect of *such* conditions.

It is not necessary to discuss the other printed exceptions by which the steamship line seeks to absolve itself from ordinary duties toward its passengers, nor by which it seeks to impose regulations upon the passengers for their conduct upon the steamship. In the case of The Majestic, 166 U. S. 375, 17 Sup. Ct. 597, 41 L. Ed. 1039, and in accord with the general trend of decision in the United States court, it has been held that a passenger is not bound by obscurely printed limitations that are not shown to have been brought to the passenger's attention and which were not so printed as to be obviously a part of his contract.

This would also seem to be the law of England. The Titanic, L. R. 3 K. B. D. 73 (1914). But certain cases have been brought to the court's attention which would indicate that the law of France imposes upon the passenger the obligation of all printed matter contained upon the ticket. In the present case the ticket does not show that the passenger signed in the place where a blank for such signature was provided, so as to subscribe to the various conditions of the ticket. In spite of this, and without relying upon the French law, it seems to this court that the passenger cannot throw upon the steamship company the duty of litigating, by subrogation of rights, a claim against the French government, or those foreign governments declaring the war, for the results of actual conditions of war after the declaration.

The making of the contract for passage was reasonably to be interpreted as subject to provisions relating to governmental direction and acts, as well as to interference because of conditions of war, particularly if set forth on the ticket. The passenger, who ran the risk of a declaration of war by his presence in the foreign country, cannot claim as a breach of contract those acts which show *inability* to perform the contract, through possibly unnecessary and extravagant anticipatory measures by the governmental authorities.