**R. V. ARCHAWSKI et al., Libellants,**

v.

**Basil HANIOTI, etc., et al., Respondents.**

United States District Court,
S. D. New York.

Feb. 9, 1955.

Judgment Reversed June 3, 1955.

Harry D. Graham, New York City, for libellants.

Leonard Altschul, New York City (Archibald Palmer, New York City, of counsel), for respondent.

WALSH, District Judge.

After a decree had been entered in favor of libellants, respondent moved to vacate the decree as one entered upon a default and to vacate the order for body execution entered in connection with that decree. Both motions are denied.

The trial of this action was duly scheduled for November 23, 1954. On that date the attorneys of record for the respondent Hanioti appeared before the court, stating they had been unable to get in touch with their client, had no idea where he could be reached, and did not know when or if he would return. They conceded that he was already in default in appearing for oral examination although an order directing his appearance had been made from the bench by Judge Sugarman, and it is uncontradicted that he was in default on three other occasions in connection with this matter. They were unprepared to offer any defense. The attorney for the libellants submitted his proof and a decree was granted in their favor. On December 6th the decree was formalized and signed by the Court embodying the judg-

ment and authorizing the issuance of execution against the person of Hanioti.

Thereafter, on December 7th, respondent Hanioti first manifested an interest in these proceedings. By a show cause order he moved to vacate the decree and to enjoin its enforcement by body execution. His explanation for his failure to cooperate with his attorneys on November 23rd was that he had had a falling out with them as long ago as December, 1953, that he had discharged them, that they had refused to represent him, that they refused to turn over papers in their possession pertaining to his various lawsuits to his present attorney (who was not of record in this case), and refused to give him any information as to the date of trial in the present action.

However, his own affidavit belies these excuses as well as his claim made in court by one of his present attorneys, that he had been under the impression that the present action was dismissed by Judge Ryan in 1952. His affidavit asserts that on November 9th his attorneys of record notified his business associate, through whom he customarily received communications, one Stathos, that the trial date was approaching and that they would not represent him. This message was relayed to him. Even if it is true, as he claims, that at that time they told Stathos the trial date was the first week in December, it does not excuse his failure to ascertain the exact and correct date independently, considering the alleged nature of his relations with these attorneys, nor his failure to take those steps which any reasonable litigant, with bona fide intentions of defending a suit for over $130,000, would take under similar circumstances in the belief that the date of trial was less than one month distant. There is no basis for believing that any other attorney represented him at the date of trial. He did not ask his present attorney, Mr. Altschul, to represent him until after its conclusion. He took no steps to notify the court of any substitution of attorneys until even later.

These facts, his testimony under oath before me, and the record of his testimony before Judge Ryan, convince me

**412**

that the default, if it may so be called, was wilful and that the respondent is an unbelievable scoundrel, indifferent to money judgments against him because he believes himself judgment proof under the ordinary methods of execution. The motion to vacate the decree is accordingly denied.

■ The only question remaining is whether body execution is appropriate in this case. Libellants' action is based on the breach of a contract of affreightment. In 1947 they paid for passage from New York to various European ports or back aboard a vessel known as City of Athens. The voyages, scheduled for July 15, 1947 and thereafter, never took place, because, prior to that date, the vessel was libelled by various creditors and sold. The passage money was never refunded although there is no doubt that under the terms of the contract itself and under the controlling decisions, the passengers were entitled to recover in admiralty from the shipowner. The Moses Taylor, 8 Wall. 411, 71 U.S. 411, 427, 18 L.Ed. 397; The Aberfoyle, Fed.Cas.No.16, affirmed Fed. Cas.No.17; Foster v. Compagnie Francaise de Nav. à Vapeur, D.C.E.D.N.Y., 237 F. 858; Benedict on Admiralty, (6th Ed.), Vol. I, § 61.

The nominal owner of the ship was a Panamanian corporation, Sociedad Naviera Transatlantica, S.A. This vessel was substantially its only asset. City of Athens, D.C., 83 F.Supp. 67, 1949 A.M.C. 572, 576. The corporation kept "some sort of books". It kept no separate bank account. It, as well as other ship-owning corporations set up and managed by Hanioti along the same lines, were, by his own admission, "mere paper companies". Their assets were freely intermingled because it was "immaterial" to Hanioti in what name checks were made out or received. They were all one group, under the control of Hanioti.

■ It is an elementary proposition of law that where the corporate form is used merely as an alter ego, or business conduit of a person, it may be disregarded to prevent fraud. Fletcher Cyc.

Corps. (Perm.Ed.), Vol. I, §§ 41, 44 and 46 and cases there cited; A. B. Dick v. Marr, D.C.S.D.N.Y., 48 F.Supp. 775, 776, affirmed, 2 Cir., 155 F.2d 923; In re V. Loewer's Gambrinus Brewery Co., D.C. S.D.N.Y., 74 F.Supp. 909, 913, affirmed 2 Cir., 167 F.2d 318; Hollander v. Henry, 2 Cir., 186 F.2d 582; African Metals Corp. v. Bullowa, 288 N.Y. 78, 85, 41 N.E.2d 466; S. F. S. Realty Co., Inc., v. George M. Adrian & Co., 159 Misc. 26, 285 N.Y.S. 1018. On the facts in this case it is clear that the libellants were entitled to recover in admiralty from respondent Hanioti personally, as the shipowner, on the maritime contract.

■ Admiralty Rules 3 and 20, 28 U.S.C.A., point to State procedures for enforcement of admiralty decrees. New York Civil Practice Act, §§ 764 and 826, provides for execution against the person in certain types of actions. Section 826 (9) provides for arrest:

"In an action upon contract, express or implied, where it is alleged in the complaint that the defendant was guilty of fraud in contracting or incurring the liability, or that, since the making of the contract, or in contemplation of making of the same, he has removed or disposed of his property with intent to defraud his creditors, or is about to remove or dispose of the same with like intent; but where such allegation is made, the plaintiff cannot recover unless he proves the fraud on the trial of the action; * * *."

The New York cases hold that a representation of solvency or concealment of insolvency by a purchaser when buying goods on credit, coupled with an intent not to pay for them, is fraudulent. It is enough to authorize arrest under this subdivision. Wright v. Brown, 67 N.Y. 1; Tannenbaum v. Reich, 2 N.Y.S. 731; cf. Morris v. Talcott, 96 N.Y. 100; Hotchkin v. Third Nat. Bk. of Malone, 127 N.Y. 329, 344, 27 N.E. 1050; and see Anonymous, 67 N.Y. 598. There is no difference between buying goods with the intent not to pay for them and taking unearned moneys with the intent not to

perform the services. The Henry W. Breyer, D.C., 17 F.Supp. 423, 1927 A.M.C. 290, 303; and see Lehrer v. Nusbaum, 133 Misc. 710, 233 N.Y.S. 340.

There is sufficient evidence in the record before the Court to justify the inference not only that respondent was insolvent, knew he was insolvent, but also that he took this money with the intent not to perform.

A. Respondent was insolvent:

In the proceeding in Baltimore creditors' claims of $775,457.82 were allowed. Only $400,000 was realized from the sale of the ship, the corporation's only asset; and less than $401,837.71 was available for distribution. Insolvency may be inferred from the fact that shortly after the purchase judgments were entered against the purchaser grossly in excess of the amount realized from his property. Tannenbaum v. Reich, 2 N.Y.S. 731.

B. Respondent knew he was insolvent:

Hanioti, in the Baltimore proceeding, admitted that prior to the filing of the libel in the Baltimore proceeding, he knew the corporate owner was in a precarious position and had practically no funds.

C. Respondent intended not to perform:

1. Not only did he accept passage money right up until the libel was filed, but the record shows he continued to receive it even after the filing of the libel and the attachment of the vessel by his creditors.

2. At no time was the vessel supplied or provisioned to make the scheduled July 15th voyage.

3. There were no funds in any of Hanioti's various coffers to provide such supplies and provisions. Hanioti's account with the ticket agent was virtually empty. The Court found no assets belonging to the Sociedad except the vessel. City of Athens, D.C., 83 F.Supp. 67, 1949 A.M.C. 572, 576. According to Hanioti's own testimony before Judge Ryan, referred to by both parties in connection with this motion, the Compania De Vapores, through whose accounts most of the disbursements for the shipowning corporation were made, also "collapsed" along with his other companies in 1947.

These facts are sufficient to satisfy the Court that Hanioti accepted the passage money, most of which was received within a month of the promised voyage, with the knowledge that the vessel could not make the July crossing and with the intention of defrauding the libellants.

The action is on the contract, thus within the admiralty jurisdiction of the Court. The libel alleges fraud in the contracting of the agreement which was broken. This fraud has been established to my satisfaction. Under the New York statutes this is enough to sustain a body execution.

The libellants are also entitled to body execution on the further ground that Hanioti disposed of or removed his property with intent to defraud. By his own admission he had the unqualified power to dispose of the funds paid to his ticket agent by the libellants. In New York, it has been held that such funds, paid for passage on ships for voyages which were not undertaken form constructive trust funds for the benefit of the prospective passengers. Acker v. Hanioti, 276 App.Div. 78, 92 N.Y.S.2d 914. No satisfactory explanation was ever made as to their whereabouts. Like the District Court for the District of Maryland, I disbelieve his testimony that they had been ultimately paid over to Todd. Even if they were, in view of his financial circumstances, he had no right to use them to pay an old debt unrelated to the voyage in question. His diversion of these moneys to the Vapores account where they were mingled with funds which had been paid to his other companies and out of which they could not be traced, and his failure to keep separate records and accounts for the Sociedad, constituted a disposal with intent to defraud.

Motions to vacate the decree and the order for body execution contained therein are denied. Costs to libellants. It is so ordered.