R. V. ARCHAWSKI et al., Libellants-Appellees,

v.

Basil HANIOTI etc., Respondent-Appellant.

No. 9, Docket 23566.

United States Court of Appeals
Second Circuit.

Argued Oct. 3, 1956.

Decided Dec. 26, 1956.

Harry D. Graham, New York City, for libellants-appellees.

Leonard Altschul, New York City (Samuel Bader, New York City, of Counsel), for respondent-appellant.

Before FRANK, MEDINA and HINCKS, Circuit Judges.

MEDINA, Circuit Judge.

This proceeding was brought to recover sums of money paid by libellants [1] for passage upon the vessel City of Athens on a sailing to Europe scheduled for July 15, 1947, no part of which was repaid, despite the fact that the voyage was abandoned. When first before us we dismissed for lack of admiralty jurisdiction and this holding was reversed by the Supreme Court and the case is again here for consideration of the contentions of respondent which were not previously passed upon. Archawski v. Hanioti, 350 U.S. 532, 76 S.Ct. 617, reversing, 2 Cir., 223 F.2d 406.

Due in no small measure to various maneuvers and dilatory tactics by respondent, to whom the court below with considerable justification referred as "an unbelievable scoundrel," but also to confusion stemming from the allegations contained in the libel, the method of proof pursued by libellants and their determination at all hazards to enforce the decree by putting respondent in jail, what should have been a simple case comes to us encased in a mass of procedural complexities.

To bring some order out of this seeming chaos, we shall discuss only the following questions, which we think dispositive of the appeal:

1. Were the proceedings in the District Court regular?

2. Was the evidence sufficient to sustain a recovery by libellants against respondent for the passage money?

3. Was the provision in the decree for a body execution authorized by law?

I.

■ Respondent, through his proctors of record, filed a notice of appearance and a personally verified answer denying the allegations of the libel. When the case was reached for trial in due course, one of respondent's proctors of record appeared and requested in adjournment. When this was denied, he stated, "Then I will sit here and just see what is happening." The court proceeded to conduct an inquest, disavowing any intention to take advantage of the presence of respondent's proctor, who declined to take part in the proceeding. Under these circumstances it is clear that respondent was not represented at the inquest, and it is not necessary to consider whether respondent's proctor in fact represented him at that time. It is not material whether or not respondent personally knew that the case was about to be reached for trial. It was his business to keep track of the case and assert whatever defense he had.

■ While respondent's failure to appear may be referred to in a colloquial sense as a default, it was not properly speaking a default and did not admit all the properly pleaded and material allegations of the libel. His answer had put all these allegations in issue and libellants were accordingly put to their proof. Bass v. Hoagland, 5 Cir., 172 F.2d 205, certiorari denied, 338 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494. The court below was entirely justified in taking the inquest.

II.

Following entry of the decree, respondent appeared by his present proctor and in effect moved for a new trial. The motion was denied in an opinion reported at 129 F.Supp. 410.

■ We proceed to consider the sufficiency of the proofs adduced on the inquest in support of libellants' claim.

The Supreme Court has held "that the obligation to pay the moneys arose because of a breach of the contract to transport passengers" and that even where the libel reads like *indebitatus assumpsit* at common law, admiralty has jurisdiction "provided that the unjust

---

1. The parties are referred to by their designations in the court below.

enrichment arose as a result of the breach of a maritime contract." Archawski v. Hanioti, supra, 350 U.S. at pages 534, 536, 76 S.Ct. at pages 620, 621.

Thus libellants, in order to recover, were obliged to establish no more than the making of the contracts of passage, the receipt of the passage money by respondent, the abandonment of the voyage and respondent's failure to reimburse libellants upon demand.

Libellants called no witnesses. They did introduce certain documentary evidence, consisting of the stenographic transcript of certain testimony before a Commissioner in a proceeding in 1947 in the United States District Court for the District of Maryland, the Commissioner's Report, and a schedule listing the amount each libellant had paid for passage on the anticipated voyage.

Respondent testified in the Maryland proceeding. By his own admissions it was established that a number of persons purchased passage aboard the City of Athens, that the money was collected by the American Mediterranean Steamship Agency, which disbursed the proceeds according to respondent's instructions, that the nominal owner of the ship, Sociedad Naviera Transatlantica, was "a mere paper company," completely under respondent's control and without even a bank account separate from respondent's other controlled companies, and that, although demands had been made for the return of the passage moneys, they had not been repaid.

The testimony of Walter J. Letts, president of the City of Athens' general passenger agency, was to the same effect. The only remaining essential proof in the case at bar had to do with the identification of the amounts paid by the several libellants. These were set forth in the schedule above referred to. Libellants' proctor stated to the court that the schedule had been prepared from the records of the passenger agency by its treasurer-director and had been identified by Mr. Letts, who had died since the Baltimore proceeding. The proctor stated that he had the original records with him in court, and undoubtedly would have placed them in evidence had an objection been raised to the introduction of the schedule in their stead.

■■ Respondent contends that, except for his own testimony, this evidence was inadmissible hearsay, and that it may not be considered in determining whether there was proof sufficient to justify the decree. But it is well settled that objection to proffered hearsay is deemed waived by a party participating in a trial who fails to interpose a timely objection. In such a situation the hearsay may be received and weighed by the trier of the facts. Diaz v. United States, 223 U.S. 442, 450, 32 S.Ct. 250, 56 L.Ed. 500; United States v. Fleming, 2 Cir., 134 F.2d 776, McCormick, Evidence, §§ 52, 54 (1954); 1 Wigmore, Evidence, § 18; 3 Am.Jur., Appeal and Error § 343. We think a party duly noticed of the trial may not immunize himself from such a waiver by absenting himself from the trial.

■ In the situation presented, we think the libellants were not entitled as of right to introduce the hearsay evidence. But neither was the absent respondent entitled as of right to have it excluded. We hold that its admission lay within the discretion of the judge. There were no facts suggesting doubts as to the authenticity or accuracy of the evidence. On the contrary, there was much to suggest affirmatively that the evidence was trustworthy.

■■ Letts' testimony in large part coincided with respondent's admissions and was not inconsistent with them. As to the schedule, we think the court was justified in accepting the proctor's assurances as to its authenticity, and, since it summarized entries in the original records of the passenger agency, it was cogent evidence of the amounts paid by each of the libellants. We hold that the trial court did not abuse its discretion in not putting the libellants to stricter proof. Especially was this so in view of the fact (which the judge may have tak-

en into account) that even after the entry of the decree it was still open to the respondent upon a showing of substantial injustice to make a timely motion for a reopening and correction of the decree. The Eva D. Rose, 4 Cir., 166 F. 101; cf. Fed.Rules Civ.Proc. rule 60(b), 28 U.S. C. Although a motion for a new trial was made by respondent there was at no time any showing that the amounts claimed to have been paid by libellants were not correct.

▆ Had there been any real defense to the claim for the repayment of the passage money it is fair to assume that respondent would have kept himself informed of the progress of the case on the docket and made some endeavor to refute libellants' proofs. We have no doubt whatever that he received the amounts paid and failed to refund them. The evidence amply supports that part of the decree which determines that respondent is indebted to libellants in the amounts stated.

### III.

The real difficulty with the case concerns the provision in the decree for the issuance of a body execution.

We pass over as unimportant the specific wording of the decree. The file discloses a property execution returned *nulla bona* on January 11, 1955. We shall assume, *arguendo*, that there is a decree directing in proper form the issuance of a body execution, and that all preliminary formalities have been complied with, and thus cut right down to the basic question of whether this is an action in which a body execution may be obtained.

Libellants rely[2] on Admiralty Rule 20, 28 U.S.C., which provides:

"In all cases of a final decree for the payment of money, the libellant shall have a writ of execution, in the nature of a fieri facias, commanding

the marshal or his deputy to levy and collect the amount thereof out of the goods and chattels, lands and tenements, or other real estate of the respondent, claimant, or stipulators. And any other remedies shall be available that may exist under the state or federal law for the enforcement of judgments or decrees."

Under New York law, Civil Practice Act Section 764, an execution against the person, with certain exceptions not here pertinent, may issue in the types of cases defined in Section 826, which is entitled "Right to arrest depending upon the nature of the action." Libellants here rest their claim to be entitled to the body execution contained in the decree in this case on Subdivision 9 of Section 826, which provides that a defendant may be arrested:

"In an action upon contract, express or implied, other than a promise to marry, where it is alleged in the complaint that the defendant was guilty of a fraud in contracting or incurring the liability, or that, since the making of the contract, or in contemplation of making the same, he has removed or disposed of his property with intent to defraud his creditors, or is about to remove or dispose of the same with like intent; but where such allegation is made, the plaintiff cannot recover unless he proves the fraud on the trial of the action; and a judgment for the defendant is not a bar to a new action to recover upon the contract only."

Formerly, the old Code of Civil Procedure in New York, by Section 549, permitted an order of arrest based upon facts extrinsic to plaintiff's "cause of action." For example, an order of arrest might issue in an action on contract, if there was proof by affidavit "that the

---

2. Libellants also contend that the district courts sitting in admiralty have inherent power to order body executions. We are referred to no authority in support of this proposition, and we are not satisfied that such power exists. On the contrary, the fact that the Supreme Court has prescribed forms of execution for the admiralty courts leads us to believe that no others were intended. See Admiralty Rule 20.

defendant was guilty of a fraud in contracting or incurring the liability," but plaintiff might recover judgment after trial, even if he failed to prove the fraud, provided he did prove the "cause of action" on contract. This was thought to be unfair to such a defendant, and by amendment in 1879, there was placed in Section 549 substantially the language now found in Subdivision 9 of Section 826, quoted above. Thus the allegation of "fraud in contracting or incurring the liability" became a substantive part of plaintiff's "cause of action," Moffatt v. Fulton, 132 N.Y. 507, 30 N.E. 992, 993, and, in such a case, namely one where the complaint alleged a claim on contract, plus an allegation that "defendant was guilty of a fraud in contracting or incurring the liability," plaintiff's failure to prove the fraud at the trial would result in a dismissal of his complaint, even if he fully proved a claim for breach of contract. Schlafer v. Heisner, Sup., 73 N.Y.S.2d 648. And, according to the New York statute, this would be true even if plaintiff obtained no order of arrest and never intended to apply for one. The mere inclusion of the allegation in the complaint, whether by inadvertence or otherwise, would require a dismissal of the action for failure of proof.

We cannot believe that a suitor in a federal admiralty court must suffer a dismissal of his complaint, despite the fact that he has fully proved a valid claim for relief in admiralty, simply because there may be found in the libel allegations which, when fairly construed, charge a fraud in "the contracting or incurring of a liability" on express or implied contract, or some other "extrinsic" facts such as are enumerated in Section 826(9). Thus, in our view, the New York system cannot be adopted in its entirety by the admiralty court. While it is true that Admiralty Rule 20 merely provides that "any other remedies" available under state or federal law for the enforcement of judgments or decrees shall be available, and thus might be thought to adopt that part of the New York statute which authorizes a body execution without adopting that part which relates to dismissing the complaint, we incline toward a different view. We think that since the New York statute was meant to authorize a body execution only where the plaintiff's failure to prove the fraud alleged would result in dismissal of his complaint, and since this is not the case in admiralty, the New York statute can have no application in a court of admiralty. Cf. 28 U.S.C. § 2007.

But we find it unnecessary to make any broad ruling on the subject, as we find not only that libellants' proof failed to establish any fraud which would justify an order of arrest under the New York statute, but also that the libel contains no such allegations, when tested in the light of the New York authorities.

The libel alleges that at the time respondent held out the City of Athens as a common carrier of passengers for hire he was "hopelessly insolvent." There are other allegations that respondent acted improperly, but none of these charges the kind of fraud required by the statute, which is either (1) fraud in incurring the obligation or (2) disposing of property, in contemplation of or since making the contract, with intent to defraud creditors. The allegation "That in addition to the aforesaid fraudulent acts of the respondent, he committed other transactions, made conveyances, assignments and other manipulations with the intent to deceive and in fraud of creditors," aside from any question of excessive generality, is insufficient, since the alleged fraudulent acts referred to would seem to have no relation whatever to the contracts of passage and serve only to indicate what an unscrupulous man libellants conceived respondent to be. It is not alleged that the transfers were made either in contemplation of or since making the contracts.

The allegation of insolvency does not amount to a charge of fraud in the incurring of the obligation. A fixed intention not to perform is necessary, and a condition of insolvency is not in-

consistent with a hope of performance. The record in this case, by way of illustration, evinces an expectation that the ship would sail on schedule. Respondent was making every effort to mollify his principal creditor, turning over to it substantial sums of money as received, and evidently believed that it would be content to be paid from the profits of future voyages. Although this creditor did in fact libel the ship, there is no reason to believe that respondent did not hope and expect that it would forbear from doing so. Whatever the state of mind of respondent, though, the sufficiency of the libel must be tested by its proper allegations.

 Under the law of New York, one who enters into a contract without disclosing a known condition of insolvency does not thereby become chargeable with fraud. In Morris v. Talcott, 96 N.Y. 100, it was held, at pages 107–108:

> "It is well settled in this State that an intent to defraud cannot be imputed to a party who contracts a debt knowing that he is insolvent, merely from the fact of his insolvency, and his omission upon a purchase of property upon credit to disclose such condition to his vendor. Nicholas v. Pinner, 18 N.Y. 295; [Nicholas v. Michael] 23 [N.Y.] 264; Wright v. Brown, 67 [N.Y.] [1], 9; People's Bank [of City of New York] v. Bogart, 81 [N.Y.] [101], 108. A condition of known insolvency on the part of an intending purchaser of property, accompanied with an intention to acquire the property of his vendor without paying for it, constitutes such a fraud as will make the vendee liable to arrest in an action for the debt; but the intention not to pay can no more be inferred from the mere fact of insolvency, than the fact of insolvency can be inferred from the existence of an intention not to pay."

 Fairness to the defendant, whose very liberty may be at stake, demands that the complaint show unequivocally on its face whether a foundation is being laid for an order of arrest or a body execution. In addition, since failure to prove a charged fraud will cause dismissal of even a meritorious claim, whether or not an order of arrest has been obtained, fairness to the plaintiff also requires that possible allegations of fraud be narrowly read. In the instant case, the allegations of fraudulent conduct are not cast in the terms of the statute and bear no discernible relation thereto. Certainly we can find nothing in the libel to indicate that at the time the libel was drawn libellants intended to rely upon Section 826(9).

In any event, whatever the intention of the pleaders, we hold that the libel does not allege a fraud within the meaning of the New York statute now invoked.

 There is another reason why the allegations do not satisfy the statute, even if it be assumed *arguendo* that the libel charges that respondent fraudulently induced libellants to purchase passage aboard his ship. The question would remain whether there had been "fraud in contracting or incurring the liability" sued upon. The New York courts have been hostile to the statute, representing as it does "a system of great severity, fruitful of oppression." This characterization appears in Hathaway v. Johnson, 55 N.Y. 93, 95, where it was held:

> "Statutes authorizing arrest and imprisonment for debt, although remedial in that they are designed to coerce, by means of the imprisonment, the payment of the creditor, are also regarded as penal, and ought not to be extended by construction so as to embrace cases not clearly within them."

In Novotny v. Kosloff, 214 N.Y. 12, 108 N.E. 189, plaintiff allegedly was fraudulently induced to enter into a contract of employment with defendant. When defendant later discharged plaintiff, thereby breaching the contract, plaintiff sued for damages, and the question arose "whether the fraud alleged was committed 'in contracting or incurring the li-

ability' sued on." The court held it was not. The liability fraudulently incurred, said the New York Court of Appeals, was the liability to perform the contract, not the liability to respond in damages for failure to perform. The typical case under the statute, the court explained, involves the fraudulent obtaining of credit. In this situation the obligation to pay is the liability called for by the contract itself and accordingly is the liability fraudulently incurred. "But a liability to respond in damages for a non-performance of the contract in refusing to carry it out, * * * cannot be said to be incurred until the breach is actually committed and is unrelated to the fraud in the making of the contract."

We recognize that Novotny dealt with a case wherein the plaintiff sued on the contract relying on *subsequent* improper conduct by the defendant. A situation in which the plaintiff disaffirms the contract and relies on a promise implied in law *at the same time* the contract is made may be thought to be different. We think that Novotny applies here as well. The liability sued on *arises out of* fraud but is not fraudulently *incurred*.

Two lower New York courts, without referring to Novotny, have taken opposite views on whether the liability implied in law is fraudulently incurred. Compare Lehrer v. Nussbaum, 133 Misc. 710, 233 N.Y.Supp. 340 (yes), with Walker v. Sanford, 126 Misc. 597, 214 N.Y.Supp. 202, affirmed 217 A.D. 727, 216 N.Y.Supp. 932 (no). A recent New York case, in which Novotny was invoked, however, squarely holds that that case precludes arrest where the obligation sued on is not that called for by the contract itself. Frazier v. Tittle, Mun.Ct., 100 N.Y.S.2d 534. The situation in that case was strikingly similar to libellants' theory of the facts alleged in the case at bar. Defendant was accused of selling goods he was knowingly not in a position to deliver. Upon discovery of this fact, plaintiff demanded his money back and, not receiving it, brought suit, alleging fraudulent intent.

The court held that the liability sued upon had not been fraudulently incurred and denied a body execution. We accept this interpretation of the Novotny decision. It is in line with the expressed policy of the highest court of New York that this statute should be narrowly construed.

Since the allegations of the libel are not sufficient to justify an order of arrest under New York law, the authorization of a body execution cannot stand. The decree must be modified by striking out the provision relating to the body execution, and as modified is

Affirmed.

FRANK, Circuit Judge (concurring).

I concur in the decision. I also concur in the opinion with one exception.

At the trial, where appellant was absent and unrepresented by counsel, the judge received in evidence an unauthenticated copy of the schedule of passengers' payments, and the money judgment the judge entered cannot be sustained without reliance on that evidence. I think there was no error here, because of these peculiar circumstances: When libelant's counsel offered the schedule, he advised the judge that, if necessary, he could introduce evidence authenticating it. I think the judge had discretion to rely on counsel's assurance on that score; moreover, respondent, in his motion for a new trial made no showing that the schedule in evidence could not have been authenticated.

What bothers me about my colleagues' opinion is that it seems, in part, to say this: (1) When a party is represented at a trial by a lawyer, if his lawyer does not object to the reception of hearsay evidence, he waives the objection. (2) If, then, a party and his lawyer fail to show up at a trial, the party waives, in advance, any such objection, at least to the extent that thereby he confers upon the judge discretion to receive hearsay evidence.

I think this a needlessly broad and dubious generalization. See, e. g., Frazier v. Frazier's Ex'rs, 2 Leigh, Va., 642,

650; cf. Lyman Co. v. Bechtell, 55 Iowa 437, 7 N.W. 673. I have found no contrary decisions, and my colleagues cite none.

Although some of us consider the hearsay rule (in civil actions) generally undesirable, nevertheless it is a part of our legal tradition which courts may not disregard. The rule embodies the policy that that sort of evidence is unreliable. It is therefore inadmissible, as thus untrustworthy, unless inferentially the opponent assents to its reception. When a party's lawyer is present at the trial, his failure to object to hearsay evidence usually constitutes assent by waiver; for otherwise he can lay a trap, concealing a defect on which he will rely if judgment goes against his client. See, e. g., United States v. Rosenberg, 2 Cir., 195 F.2d 583, 596, note 9. In such a situation the lawyer exercises his judgment at the very time when the evidence is offered. But when the party and his counsel are not present at the trial, I think (1) the judge usually owes a duty to protect him by excluding hearsay of an important character, because it is deemed unreliable, and (2), if such a trial is by the judge without a jury, the judge should not ordinarily rest his decision on important hearsay which he has let in again because it is deemed unreliable. (I say "usually" and "ordinarily" to allow for exceptional circumstances such as those present in the instant case.)

For judges to indulge in broad generalizations is often delightful and sometimes essential. But I think we should usually not indulge in a generalization when it goes far beyond the need of deciding the case at hand and may be regarded as governing decisions in future cases, affecting other litigants not parties to that case and therefore unable now to voice their criticisms. As I said in an earlier opinion:[1] "The intended consequences of efforts to govern the future often fail; the actual consequences—which may be good or evil—are, frequently, utterly different. Results are miscalculated; there is an 'illusion of purpose.' Of course, present problems will be clarified by reference to future ends, but * * * such ends, although they have a future bearing, must obtain their significance in present consequences, otherwise those ends lose their significance. For it is the nature of the future that it never arrives. 'Tomorrow today will be yesterday.' Any future, when it becomes the present, is sure to bring new and unexpected problems. There is much wisdom in Valery's reference to the 'anachronism of the future.' * * * Courts should be modest in their legislative efforts to control the future, since they cannot function democratically, as legislative committees and administrative agencies can, by inviting the views of all who may be affected by their prospective rules. And, because they do not learn those views, and must largely rely on their own imaginations, (judges) should be cautious about attempting, in present cases, to project their formulations too far and too firmly into the days yet to come. To cope with the present is none too easy, in part because the present is only a moving line dividing yesterdays and tomorrows, so that reflections on what will happen are unavoidable elements of current problems. But, although continuity, both backwards and forwards, is to some extent a necessity, judges should not shirk the present aspect of today's problems in favor of too much illusory tinkering with tomorrow's. The future can become as perniciously tyrannical as the past. Posterity-worship can be as bad as ancestor-worship."

1. Aero Spark Plug Co. v. B. G. Corp., 2 Cir., 130 F.2d 290, 292, 295, 296 (concurring opinion).