## ARCHAWSKI ET AL. *v.* HANIOTI.

No. 351.   Argued March 5, 1956.—Decided April 9, 1956.

*Harry D. Graham* argued the cause and filed a brief for petitioners.

*Israel Convisser* argued the cause and filed a brief for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The sole question in the case is whether the cause of action alleged comes within the admiralty jurisdiction of the District Court.   The District Court held that this was an action on a maritime contract, within the admiralty jurisdiction, 129 F. Supp. 410.   The Court of Appeals reversed, holding that the suit was in the nature of the

old common law *indebitatus assumpsit* for money had and received, based upon the wrongful withholding of money. 223 F. 2d 406. The case is here on a petition for certiorari which we granted, 350 U. S. 872, because of the seeming conflict of that ruling with *Krauss Bros. Co.* v. *Dimon S. S. Corp.,* 290 U. S. 117, 124.[1]

The libel alleges that respondent, doing business in his own and in various trade names, owned and controlled a passenger vessel, known as the *City of Athens,* and held out that vessel as a common carrier of passengers for hire, and that petitioners paid moneys for passage upon the vessel, scheduled for July 15, 1947, to Europe. A contract for the transportation of passengers is a maritime contract within admiralty jurisdiction.[2] *The Moses Taylor,* 4 Wall. 411. The allegations so far mentioned are plainly sufficient to establish such a contract. The libel goes on to allege a breach of that contract through an abandonment of the voyage. If this were all, it would be plain that petitioners stated a claim for breach of a maritime contract. But the libel further alleges that the sums paid by petitioners as passage money were "wrongfully and deliberately" applied by respondent to his own use and benefit "in reckless disregard of his obligations to refund

---

[1] There is also an apparent conflict with *Sword Line* v. *United States,* 228 F. 2d 344, 346, decided, after we granted certiorari, by a different panel of the Second Circuit ˌfrom the one which sat in the instant case.

[2] The Court in *New Jersey Steam Navigation Company* v. *Merchants' Bank,* 6 How. 344, 392, stated that in determining admiralty jurisdiction the inquiry is "into the nature and subject-matter of the contract,—whether it was a maritime contract, and the service a maritime service, to be performed upon the sea, or upon waters within the ebb and flow of the tide. And, again, whether the service was to be substantially performed upon the sea, or tide-waters, although it had commenced and had terminated beyond the reach of the tide; if it was, then jurisdiction has always been maintained."

the same" and that respondent "has secreted himself away and manipulated his assets . . . for the purpose of defrauding" petitioners. Then follow allegations of certain fraudulent acts and transactions.

The allegations of wrongfulness and fraud do not alter the essential character of the libel. For the ancient admiralty teaching is that, "The rules of pleading in the admiralty are exceedingly simple and free from technical requirements." *Dupont de Nemours & Co.* v. *Vance,* 19 How. 162, 171–172. And see 2 Benedict, American Admiralty (6th ed. 1940), §§ 223, 237. Though these particular allegations of the libel sound in fraud or in the wrongful withholding of moneys, it is plain in the context that the obligation to pay the moneys arose because of a breach of the contract to transport passengers. Lawyers speak of the obligation in terms of *indebitatus assumpsit,* a concept whose tortuous development gave expression to "the ethical character of the law." See Ames, The History of Assumpsit, 2 Harv. L. Rev. 1, 53, 58 (1888). As Mr. Justice Holmes once put it, "An obligation to pay money generally is enforced by an action of assumpsit and to that extent is referred to a contract even though it be one existing only by fiction of law." *Thomas* v. *Matthiessen,* 232 U. S. 221, 235.

The fiction sometimes distorted the law. A line of authorities emerged to the effect that admiralty had no jurisdiction to grant relief in such cases "because the implied promise to repay the moneys which cannot in good conscience be retained—necessary to support the action for money had and received—is not a maritime contract." [3] *United Transp. & L. Co.* v. *New York & B. T. Line,* 185 F. 386, 391. Yet that duty to pay is often referable,

---

[3] And see *Israel* v. *Moore & McCormack Co.,* 295 F. 919; *Home Ins. Co.* v. *Merchants' Transp. Co.,* 16 F. 2d 372; *Silva* v. *Bankers Commercial Corp.,* 163 F. 2d 602.

as here, to the breach of a maritime contract. As Mr. Justice Stone said in *Krauss Bros. Co.* v. *Dimon S. S. Corp., supra,* at 124:

". . . Even under the common law form of action for money had and received there could be no recovery without proof of the breach of the contract involved in demanding the payment, and the basis of recovery there, as in admiralty, is the violation of some term of the contract of affreightment, whether by failure to carry or by exaction of freight which the contract did not authorize."

The truth is that in a case such as the present one there is neither an actual promise to repay the passage moneys nor a second contract. The problem is to prevent unjust enrichment from a maritime contract. See Morrison, The Remedial Powers of the Admiralty, 43 Yale L. J. 1, 27 (1933). A court that prevents a maritime contract from being exploited in that way does not reach beyond the domain of maritime affairs. We conclude that, so long as the claim asserted arises out of a maritime contract, the admiralty court has jurisdiction over it.

The philosophy of *indebitatus assumpsit* is, indeed, not wholly foreign to admiralty. Analogous conceptions of rights based on quasi-contract are found in admiralty. One who saves property at sea has the right to an award of salvage, regardless of any agreement between him and the owner. See *Mason* v. *Ship Blaireau,* 2 Cranch 240, 266; *The Sabine,* 101 U. S. 384, 390; 1 Benedict, *supra,* § 117 *et seq.* Likewise, where cargo is jettisoned, the owner becomes entitled to a contribution in general average from the owners of other cargo which was saved without the aid of any agreement. See *Barnard* v. *Adams,* 10 How. 270, 303–304; *Star of Hope,* 9 Wall. 203, 228–230; 1 Benedict, *supra,* § 98. Other examples could be given. See Chandler, Quasi Contractual Relief

in Admiralty, 27 Mich. L. Rev. 23 (1928). Rights which admiralty recognizes as serving the ends of justice are often indistinguishable from ordinary quasi-contractual rights created to prevent unjust enrichment. How far the concept of quasi-contracts may be applied in admiralty it is unnecessary to decide. It is sufficient this day to hold that admiralty has jurisdiction, even where the libel reads like *indebitatus assumpsit* at common law, provided that the unjust enrichment arose as a result of the breach of a maritime contract. Such is the case here.

The judgment is reversed and the case is remanded to the Court of Appeals for proceedings in conformity with this opinion.

*Reversed and remanded.*