John J. ROGERS, Appellant,

v.

AMERICAN PRESIDENT LINES, LTD., Appellee.

No. 17110.

United States Court of Appeals Ninth Circuit.

June 5, 1961.

Rubin Tepper and McMurray, Walker & Tepper, and Allan Brotsky and Richard A. Bancroft, San Francisco, Cal., for appellant.

Peter N. Teige and George D. Wick, Jr., and Richard Ernst and Richard G. Logan, San Francisco, Cal., for appellee.

Before HAMLEY, JERTBERG and KOELSCH, Circuit Judges.

HAMLEY, Circuit Judge.

In this amended libel in personam brought against American President Lines, Ltd., John J. Rogers seeks to recover compensation additional to that he has already received for services rendered to respondent. Various exceptions and exceptive allegations were filed by the company, and Rogers filed a reply thereto. The court sustained some of the exceptions and granted Rogers time to file a second amended libel. He elected to stand on his pleadings, and a final decree of dismissal was entered. Rogers appeals.

Twice before related matters in this dispute have been before this court. Rogers v. Alaska Steamship Co., 9 Cir., 249 F.2d 646; 9 Cir., 290 F.2d 116. Background facts additional to those recited herein are set out in those opinions.

In his amended libel Rogers alleged that between March 17, 1952, and

December 18, 1955, he made nine voyages as a member of the stewards department on appellee's SS President Monroe. Concerning each of these voyages, Rogers alleged that appellee is indebted to him for the reasonable value of the work which he performed, less sums already paid to him by appellee for such work and less associated payments already made by appellee to certain health and welfare and pension trust funds. It was further alleged that the reasonable value of his work is equal to the wages at the basic and overtime rates actually paid plus the actual associated payments made to the trust funds,

"adjusted upward to reflect the same percentage increases and effective dates of increase as were paid by respondent after June 19, 1952, to its unlicensed deck and engineroom department employees, and to the health and welfare trust funds and pension trust fund of which said employees were beneficiaries, for said voyage."

With regard to each voyage, and in the alternative, it was alleged in the amended libel that unless the company is required to pay Rogers the indebtedness due him, computed as indicated above, "respondent will remain unjustly enriched at the expense of libelant, contrary to all principles of equity and good conscience."

The trial court, in sustaining one of the company's exceptions, held that since Rogers was paid wages at the rate specified in written shipping articles which he had executed, he could not state a claim for additional compensation on the basis of implied contract or unjust enrichment without alleging facts which would warrant disregard of those articles.[1]

In order to determine whether this was a correct ruling, it is necessary to review those recitals in the exceptions and exceptive allegations and in Rogers' reply thereto which bear upon this point.

It is recited in appellee's exceptions, among other things, that the libel does not state a cause of action on which relief can be granted because (a) it must be presumed, in the absence of allegations to the contrary, that the terms of employment were covered in articles, as required for foreign voyages by 46 U.S. C.A. § 564, and an action will not lie on an alleged implied contract where an express contract covers the same subject matter; and (b) the counts for unjust enrichment do not lie because the libel shows that libelant is seeking to recover for services rendered under the terms of a written contract, payment having been accepted in full satisfaction thereof as evidenced by the execution of a mutual release and discharge.

We shall now summarize the pertinent facts set forth by the exceptive allegations. Prior to June 19, 1952, Rogers was employed under the terms of a labor contract negotiated through collective bargaining in accordance with the Labor Management Relations Act, 1947, 29 U.S.C.A. §§ 141–187. In April 1951 a dispute developed concerning the representation of Rogers for collective bargaining purposes. On June 19, 1952, a consent decree was issued by the United States Court of Appeals for the Ninth Circuit in connection with this representation dispute and an order of the National Labor Relations Board dealing with the dispute.

Attached to this decree as an exhibit was an outline of terms and conditions of employment of cooks and stewards.

---

1. The trial court said in the order sustaining the exceptions: "Both the contract of employment of libelant and his release upon completion of the voyage must be set aside herein under some theory before libelant can successfully recover. The very least required of libelant is that he set forth the facts he relies on to avoid the ordinary meaning of the employment contract and the release. If he relies upon fraud or perhaps upon duress he must allege what facts constitute such; if he has another theory to avoid these agreements he should state it. It is a clear rule at law that averments of this nature must be by explicit pleading (F.R.C.P. 9(b).)"

The decree provided, with the express approval of the employers, the NLRB, the National Union of Marine Cooks and Stewards, and the Marine Cooks & Stewards, AFL, that these terms and conditions would be immediately adopted and continued in effect until a union had been duly certified by the NLRB as the exclusive representative of employees in the stewards departments of the affected vessels.

Among other things, the outline provided that the substantive provisions of the pre-existing contract with respect to wages, rates of pay, hours of work, and other conditions of employment would remain in effect. The decree also provided that the referee appointed for the Port of San Francisco would have the power to adjudicate grievances concerning the employment of stewards department personnel.

On each voyage involved in this suit, Rogers and the master of the vessel entered into written shipping articles executed before a shipping commissioner, in which the exact wages to be paid Rogers were specified. The wage provisions corresponded to those set forth in the outline attached to the court decree, and Rogers was paid the wages specified.

In his reply to the exceptive allegations, Rogers did not, as alleged by appellee, dispute the written terms of the consent decree. He contended, however, that this decree "did not prevent, and was not intended to prevent" the company's becoming obligated to pay him "the full and reasonable value of his services."

Rogers did not deny that he entered into shipping articles as alleged for each voyage or that he was paid according to their terms. He maintained, however, that these articles "did not specify, nor were they intended to specify, the full compensation to be paid libelant for such services."

Appellant did not take advantage of the opportunity afforded him to further amend his libel to allege fraud or duress, or to present any other ground not already advanced in pleadings on which the wage terms of the shipping articles could be avoided. The only theory upon which he relied in urging disregard of the express terms of those articles is that since unlicensed deck and engineroom department employees received certain wage increases during the time appellant's wages were frozen under the consent decree, the company impliedly agreed to give him a like increase over and above the wages specified in the decree and in his shipping articles, and will be unjustly enriched if it fails to do so.

■ Since this sole theory of the case was not predicated upon any factual showing beyond the allegations just summarized, only a question of law was presented, and the suit was properly adjudicated on the pleadings.

■■ An action does not lie on an implied contract where there exists between the parties a valid express contract which covers the same subject matter. As the Supreme Court said in Klebe v. United States, 263 U.S. 188, 192, 44 S.Ct. 58, 59, 68 L.Ed. 244 "[a] contract implied in fact is one inferred from the circumstances or acts of the parties; but an express contract speaks for itself and leaves no place for implications." Giving application to this rule with respect to contracts implied in law as well, this court has said: "There cannot be an implied contract either in law or in fact contrary in terms to a controlling express contract." United States for Use of Westinghouse Electric Supply Co. v. Ahearn, 9 Cir., 231 F.2d 353, 356.

Archawski v. Hanioti, 350 U.S. 532, 76 S.Ct. 617, 100 L.Ed. 676, cited by appellant, held that admiralty has jurisdiction over a libel asserting unjust enrichment. But the holding was limited to a claim of unjust enrichment arising as a result of a breach of a maritime contract. In the case before us, no breach of contract is alleged.

Appellant argues that the rationale underlying the decision in Martin v. Campanaro, 2 Cir., 156 F.2d 127, 129, supports his claim for recovery. But the question there involved was to determine,

under the circumstances of that case, what contract "implied in fact" pertaining to wages the parties' course of conduct implied when employees continued to work as under the terms of an express contract which had expired. In the instant case, an express agreement embodied in written shipping articles specifying the full compensation to be paid was in effect during each voyage in question.

Accordingly, and without reaching other grounds relied upon by the trial court or additional grounds advanced in the exceptions and exceptive allegations, the judgment is

Affirmed.