**INTEROCEAN STEAMSHIP CORPORATION and Micronesia Interocean Line, Inc., both corporations, Plaintiffs,**

**v.**

**AMELCO ENGINEERS CO., a corporation, Defendant.**

**No. C–70 2073.**

United States District Court,
N. D. California.

April 21, 1971.

**996**

John A. Edginton, Graham & James, San Francisco, Cal., for plaintiffs.

William J. Bush, Hanson, Bridgett, Marcus & Jenkins, San Francisco, Cal., for defendant.

## MEMORANDUM AND ORDER

PECKHAM, District Judge.

Plaintiff brings this action seeking to recover in excess of $36,000 on an oral contract which called for it to procure stevedoring services. Defendant has moved to dismiss for lack of admiralty jurisdiction, but concedes that diversity jurisdiction exists. Upon hearing on the motion to dismiss, however, defendant sought to raise the issue of improper venue, which he alleges would not lie in this district if jurisdiction is based upon diversity alone. Thus, the following determinations are before the court:

(1) Is there admiralty jurisdiction?

(2) If there is no admiralty jurisdiction, should defendant be deemed to have waived the improper venue defect for failing to join such challenge in its motion to dismiss, pursuant to Fed.R.Civ.P. 12(h) (1);

(3) If the defect in venue is not deemed to have been waived, where is proper venue?

Since the court concludes that admiralty jurisdiction does exist here, decision on the latter two issues is unnecessary.

Plaintiffs allege that pursuant to a contract with the United States government, Micronesia Interocean Line, Inc., a plaintiff herein, had the exclusive right to provide sea transportation services to the United States Trust Territory of the Pacific Islands. Plaintiffs further allege that prior to October 1, 1969, there had been a dispute between Micronesia and defendant Amelco Engineers Company—who had a government contract to install sewer and water facilities on the island of Saipan in the United States Trust Territory—as to whether defendant itself would be allowed to charter a vessel for sea transportation of sewer pipes to Saipan or whether Micronesia Interocean Line had the sole right to transport such cargo. Plaintiffs state that as a result of such dispute, on October 1, 1969, an oral compromise was reached, whereby defendant would be allowed to utilize a chartered

vessel for carriage of the sewer pipe to Saipan and plaintiff Micronesia would act as agents for the vessel in connection with its loading and discharging. Plaintiffs' Complaint at 3 (Sept. 24, 1969).

Plaintiffs allege that they have performed and are bringing suit to recover $36,216.40 on account allegedly due.

## DISCUSSION

### Admiralty Jurisdiction

Defendant argues that the above oral contract between the parties was simply a contract of general agency, whereby plaintiff Micronesia would serve as defendant's agent with regard to the loading and discharging of certain cargo. Consequently, defendant argues, the agreement is not in the nature of a maritime contract and its alleged breach not a basis for maritime jurisdiction.

Plaintiffs claim that as a compromise of a dispute between defendant and Micronesia over the right to charter a vessel and engage in maritime trade between the United States and Saipan, the contract being sued upon here is maritime in nature and therefore provides the basis for admiralty jurisdiction. Plaintiffs also claim that admiralty jurisdiction can be based upon the fact that the contract, in providing for the chartering of a vessel and for the loading and discharging of cargo from such vessel, is essentially a maritime contract to which recourse must be had in resolving the present dispute, and that this is a separate basis for admiralty jurisdiction.

■ Whether an action for breach of contract falls within admiralty jurisdiction depends upon the nature and subject matter of the contract. *See, e. g.,* New Jersey Steam Navigation Co. v. Merchant's Bank, 47 U.S. (6 How.) 344, 391, 12 L.Ed. 465 (1848); *accord* Archawski v. Hanioti, 350 U.S. 532, 533 n. 2, 76 S.Ct. 617, 100 L.Ed. 676 (1956); New England Marine Ins. Co. v. Dunham, 78 U.S. (11 Wall.) 1, 26–27, 20 L. Ed. 90 (1879); Ocean Science and Engi-

neering, Inc. v. International Geomarine Corp., 312 F.Supp. 825, 826 (D.Del. 1970); T. Smith & Son, Inc. v. Rigby, 305 F.Supp. 418, 420 (E.D.La.1969). *See generally* 7A J. W. Moore, Federal Practice, ¶ .225 at 2701–13 (2nd ed. 1970). "[T]he true test is the subject-matter of the contract—the nature and character of the work to be done." State Industrial Commission v. Nordenholt Corp., 259 U.S. 263, 271, 42 S.Ct. 473, 66 L.Ed. 933 (1922); accord Kossick v. United Fruit Co., 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961).

No cases were cited to the court, and none could be found, that determined whether breach of a contract similar to that in the instant case would give rise to admiralty jurisdiction; both defendant's and plaintiffs' cases are distinguishable. What would appear to be the modern trend, however, is exemplified by Archawski v. Hanioti, 350 U.S. 532, 76 S.Ct. 617, 100 L.Ed. 676 (1956), in which the Supreme Court stated that "so long as the claim asserted arises out of a maritime contract, the admiralty court has jurisdiction over it." *Id.* at 535, 76 S.Ct. at 620. Relying upon Archawski v. Hanioti, the district court in Amerind Shipping Corp. v. Jordan International Co., 314 F.Supp. 1324 (E.D.La.1970), found admiralty jurisdiction where interpretation of a maritime contract would be required in order to decide the parties' rights. *Id.* at 1325.

■ The basic question, therefore, is whether the contract in the instant case is in the nature of a maritime contract. That the maritime elements of the contract predominate cannot be disputed. The pertinent allegations of the complaint are as follows:

V . . . . On or about October 1, 1969, defendant and INTEROCEAN STEAMSHIP CORPORATION, acting in its capacity as general agent for MICRONESIA INTEROCEAN LINE, INC. entered into an agreement on its own behalf and on behalf of MICRONESIA INTEROCEAN LINE, INC. whereby defendant would be allowed to utilize a chartered vessel

for carriage of the said shipment of sewer pipe from Stockton, California, to Saipan, Mariana Islands, and that MICRONESIA INTEROCEAN LINE, INC. and its designated agents would act as agents for the vessel in connection with its loading and discharge for which MICRONESIA INTEROCEAN LINE, INC. and/or its designated agents would be paid a commission . . . .

As alleged in this portion of the complaint, this contract is maritime in nature. Since the claim asserted arises out of that contract, admiralty jurisdiction will lie. Archawski v. Hanioti, *supra.* Whether the claim itself, in the abstract, is or is not, strictly speaking, a "maritime claim" is not dispositive. This is why defendant-movant's reliance on the case of P. D. Marchessini & Co., Inc. v. Pacific Marine Corp., 227 F. Supp. 17 (S.D.N.Y.1964) is misplaced. The claim itself may or may not be a "claim in agency". But it arises out of a contract predominantly maritime in nature, to which recourse will ultimately be had, and it is thus preferable that admiralty jurisdiction be recognized.

Furthermore, plaintiffs allege that the contract being sued upon was the result of a compromise of disputed maritime rights. Only one case has addressed such an issue, and it stated that such compromise agreements should be decided in courts of admiralty. *See* CIA Naviera Somelga, S. A. v. M. Golodetz & Co., 189 F.Supp. 90, 95–96 (D.Md.1960).

Defendant's reliance on Minturn v. Maynard, 58 U.S. (17 How.) 477, 15 L.Ed. 235 (1855), and Cory Bros. & Co. v. United States, 51 F.2d 1010 (2d Cir. 1935) is not well-founded, since, as plaintiffs persuasively argue, their present vitality is at best questionable. *See* Plaintiffs' Memorandum of Points and Authorities at 3–5 (February 3, 1971).

Accordingly, this court concludes that admiralty jurisdiction does exist in this case. Defendant's motion to dismiss is therefore denied.

So ordered.