James D. **BERGERIA**

v.

**MARINE CARRIERS, INC.**

Civ. A. No. 70-2928.

United States District Court,
E. D. Pennsylvania.

April 11, 1972.

**1154**

Paul M. Goldstein, William Goldstein, Philadelphia, Pa., for plaintiff.

Rawle & Henderson, Robert B. White, Jr., Philadelphia, Pa., for defendant.

## OPINION AND ORDER

EDWARD R. BECKER, District Judge.

The plaintiff, a merchant seaman, has brought a claim for personal injuries under the Jones Act claiming negligence of the shipowner and unseaworthiness of the vessel. He has demanded a jury trial. Plaintiff has already received the sum of $3,618.66 in maintenance and cure and unearned wages due to the disability which forms the basis for the Jones Act claim. The shipowner contends that the disability in question stems not from anything which occurred on the voyage, but from a preexisting condition which the plaintiff deliberately concealed from it and from the physician examining him to determine his fitness for sea duty by misrepresenting to the doctor and falsifying information on the statement accompanying the applica-

tion for employment on the subject voyage.[1] There are two interesting questions before us: (1) whether admiralty jurisdiction permits us to entertain a counterclaim which the shipowner seeks to interpose in this action looking towards the recovery of the maintenance and cure which it claims was procured by fraud; and (2) whether, if the counterclaim is cognizable, it may be submitted to the jury.[2] While we have found cases from which to draw instruction, we can find no reported case governing the precise issues involved.

### I.

The first question is whether the counterclaim may be interposed. Plaintiff asserts that such counterclaim does not fall within the jurisdiction of this Court because it sounds in tort (i. e., misrepresentation) occurring before plaintiff joined the vessel. If plaintiff is correct, the matter is not within the maritime jurisdiction. However, we view the subject matter of the counterclaim as arising from a maritime contract (the contract of employment between the shipowner and the seaman), see Sheppard v. Taylor, 30 U.S. (5 Peters) 675, 8 L.Ed. 269 (1831), or at least from the status which is created by that contract pursuant to which the maritime law has historically recognized the right of the seaman to maintenance and cure and unearned wages. See, Gilmore and Black, Law of Admiralty § 6.7, p. 256 (1957).[3] Therefore, whether we

---

1. According to his pretrial memorandum, plaintiff, a wiper, was injured on three occasions while in the service of the S. S. Producer, defendant's vessel, in the course of a foreign voyage. The injuries were minor but allegedly resulted in a severe and prolonged aggravation of a preexisting cardiovascular condition. As noted in the text, the defendant contends that plaintiff's disability was not related to any injuries received while plaintiff was in the service of the vessel, but was due solely to the preexisting condition which allegedly was deliberately concealed.

2. This matter came before us on defendant's motion for leave to file a supple-

mental answer and counterclaim. However, the jury trial question arose during argument. The defendant contends that the counterclaim should go to the jury, but the plaintiff disagrees. Since we will have to resolve this question before trial, we elect to do so now.

3. A seaman's entitlement to maintenance and cure does not depend upon the disability resulting from an accident while in the course of his duties; it is sufficient that he became disabled while subject to the call of the ship. Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938); Gilmore and Black, supra, § 6–8, p. 257. A

view the counterclaim as one for breach of contract, or as a suit to recover because of unjust enrichment arising from a maritime contract, *see* Archawski v. Hanioti, 350 U.S. 532, 535, 76 S.Ct. 617, 100 L.Ed. 676 (1956),[4] and *cf.* McCorpen v. Central Gulf Steamship Corp., *supra* at fn. 3, we find it to be within the jurisdiction of this Court.

The case with the most analogous facts is Fraser v. Astra Steamship Corp., 18 F.R.D. 240 (S.D.N.Y.1955). *Fraser* involved an attempt by the shipowner to interpose in a Jones Act case a counterclaim for liquidated damages against the plaintiff seaman based on the damages incurred by the shipowner as a result of plaintiff's attack on his crewmate. The court held that a claim of a shipowner against a seaman for this type of conduct was within the general maritime jurisdiction of the court,[5] and that the counterclaim was cognizable on that basis. It also held that the counterclaim was properly before the court as a permissive counterclaim on the ground that it constituted a set-off, stating:

"[S]et off, recognized as a permissive counterclaim, is an exception to the general rule that there must be an independent jurisdictional basis to support a permissive counterclaim. In Marks v. Spitz [D.C., 4 F.R.D. 348], the Court explained that exception in the following words:

'Where the counterclaim is in the nature of set-off, and is used defensively rather than affirmatively, no separate federal jurisdictional basis for the set-off need be established. 1 Moore, Federal Practice (1938), § 13.03, p. 696. * * * It is a counter-demand which a defendant has against the plaintiff arising out of a transaction extrinsic to that out of which the primary claim arose. * * * The claim must be liquidated or capable of liquidation and grow out of a contract or judgment.'

---

seaman may even receive maintenance and cure in connection with an illness from which he was suffering when he signed on; however, the well recognized exception to this principle is where a seaman has deliberately concealed a preexisting condition from the shipowner. *See,* McCorpen v. Central Gulf Steamship Corp., 396 F.2d 547 (5th Cir. 1968), cert. den. 393 U.S. 894, 89 S.Ct. 223, 21 L.Ed.2d 175. *McCorpen* held that where a shipowner requires a seaman to submit to a prehiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, the seaman is not entitled to an award of maintenance and cure. To the same effect is Sammon v. Central Gulf Steamship Corp., 305 F.Supp. 1071 (S.D. N.Y.1969).

4. *Archawski* was an action by a prospective passenger against a shipowner for the return of monies prepaid to the shipowner for passage that did not take place because defendant abandoned the voyage. The court held that plaintiff set forth a valid maritime cause of action, observing, *inter alia:*

"The truth is that in a case such as the present one there is neither an actual promise to repay the passage moneys nor a second contract. The problem is to prevent unjust enrichment from a maritime contract . . . A court that prevents a maritime contract from being exploited in that way does not reach beyond the domain of maritime affairs. We conclude that, so long as the claim asserted arises out of a maritime contract the admiralty court has jurisdiction over it." 350 U.S. at 535, 76 S.Ct. at 620.

5. In finding independent maritime jurisdiction, Judge Herlands relied upon the following statutes: (1) 28 U.S.C. § 1333, the general maritime jurisdiction statute; (2) former Admiralty Rule 15 (28 U.S.C. § 2073), providing that suits for assault on the high seas or elsewhere within the admiralty and maritime jurisdiction "shall be in personam only"; and (3) 18 U.S.C. §§ 113 and 114 which provide criminal penalties for assault and maiming within the maritime and territorial jurisdiction.

In the present case, defendants have liquidated their claim against plaintiff by a settlement with the seaman who was injured by plaintiff. Defendants' liability to that injured seaman was based upon a contract implied in law, a warranty of seaworthiness." (footnotes omitted).[6]

The principles of *Fraser* are applicable here. In addition to our finding that the counterclaim is cognizable within the maritime jurisdiction, it must also be allowed as a contractual set-off.

The parties have argued the question of whether the counterclaim, if without our jurisdiction, is a compulsory or permissive one under Rule 13. Lengthy discussion of this point is unnecessary, because, even if it is not a compulsory counterclaim, we would exercise our discretion and permit it as a permissive one. Not only is no confusion caused by its interposition, but (see discussion *infra*) its presence in the case is an aid to judicial efficiency and consistency. Accordingly, we will grant defendant leave to file a supplemental answer and counterclaim.[7]

## II.

■ We also hold that the counterclaim is triable by the jury. In making this determination, we are not unmindful of the general principle that admiralty claims are not triable by a jury.[8] However, we believe that the trial of the counterclaim falls within the principles enumerated in Fitzgerald v. United States Lines Co., 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). In *Fitzgerald,* the court sanctioned a consolidated jury trial for an admiralty claim for maintenance and cure and a Jones Act claim for damages, both arising from the same injury and asserted by the same plaintiff against the same defendant. *Inter alia,* the court said:

"Requiring a seaman to split up his lawsuit, submitting part of it to a jury and part to a judge, unduly complicates and confuses a trial, creates difficulties in applying doctrines of *res judicata* and collateral estoppel, and can easily result in too much or too little recovery. . . . It is extemely difficult for a judge in trying a maintenance and cure claim to ascertain, even with the use of special interrogatories, exactly what went into the damages awarded by a jury —how loss of earning power was calculated, how much was allowed for medical expenses and pain and suffering, how much was allowed for actual lost wages, and how much, if any, each of the recoveries was reduced by contributory negligence. This raises needless problems of who has the burden of proving exactly what the jury did. And even if the judge can find out what elements of damage the jury's verdict actually represented, he must still try to solve the puzzling problem of the bearing the jury's verdict should have on recovery under the different standards of the maintenance and cure claim. In the absence of some statutory or constitutional obstacle, an end should be put to such an unfortunate, outdated, and wasteful

6. An important consideration in *Fraser* was the question of whether plaintiff's claim based upon personal injuries was exempt as is a seaman's claim for earned wages from set-off or recoupment on the part of the shipowner employer. Following the precedent of Isbrandtsen Co. v. Johnson, 343 U.S. 779, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952) the court held that it was not, and we, of course, agree.

7. Defendant says that it did not attempt to interpose the counterclaim at the time it filed its original answer because the facts which form the basis of the counterclaim were not then known to it. We exercise our discretion under Rule 13(e) to permit the counterclaim at this time.

8. *Cf.* The Sarah, 21 U.S. (8 Wheat) 391, 5 L.Ed. 644 (1823); Rules 8 and 37 Fed.R.Civ.P.

manner of trying these cases. . . ." (footnotes omitted).

In Blake v. Farrell Lines Inc., 417 F. 2d 264 (3d Cir. 1970), the court had before it the question of whether a separate action by a shipowner against the employer of a stevedore who had brought a diversity suit for personal injuries against the shipowner could be consolidated with the personal injury action with trial by jury. In holding that it could, the court concluded:

"[I]n special situations of trial consolidation of closely related actions or claims, one attended by a right to jury trial and the other not, a court may, in the interest of the efficient and expeditious administration of justice, require that both be submitted to a jury for decision upon disputed factual issues. . . .

This problem is inherent in the exercise of the judicial power of consolidation of actions. Often, as in the present case, it appears that the consolidation of an action at law and an admiralty suit will save trial time and make for consistency and efficiency in the disposition of closely related disputes arising out of the same transaction or mishap. . . . Yet, only by the decision of common issues of fact by a single trier of fact can the potential benefits of such consolidation be realized fully. Moreover, jury trial is a matter of right in the action for damages while only historic practice and the failure of the Rules to make affirmative provision for this situation inhibit the ordering of a jury trial of the admiralty suit. In these circumstances, we think it is reasonable and proper and a logical extension of the *Fitzgerald* case, to recognize the exercise of judicial power to order a consolidated jury trial of both proceedings as a proper means of fully effectuating the justifying purposes of Rule 42(a) consolidation. . . ." (citations omitted).

In the present case, the jury will have to determine whether the injuries giving rise to plaintiff's Jones Act claim were the result of an accident aboard ship (either in the nature of a fresh injury or an aggravation of a preexisting condition) or whether they resulted from the preexisting condition alone. Much the same factual determination is involved in the claim for recovery by the shipowner of the maintenance and cure which it claims was fraudulently procured. To be sure, the latter claim may involve additional factual determinations of whether the facts of the preexisting condition were intentionally concealed or misrepresented by plaintiff, but that does not eliminate the advantage of having the single trier of fact (the jury) determine those important factual issues common to the plaintiff's claim and the defendant's counterclaim.

Perhaps the proposition which we here advance can best be stated in terms of the possible untoward consequences of a failure to apply it. Plaintiff allegedly suffered three mishaps. Unless we were to submit to the jury special interrogatories so detailed as to be overly cumbersome, we (*i. e.*, the Court, as trier of the admiralty claim) would have no way of knowing to what extent the jury may find the plaintiff's condition to have resulted from the three minor accidents, or any of them, or any combination of them, or the extent to which if any or all of these accidents aggravated or exacerbated the preexisting condition, or to what extent or at what point they ceased to become an aggravating or exacerbating factor. In the absence of such knowledge, any verdict we might render with respect to recovery of all or a portion of the maintenance and cure which the defendant has paid to the plaintiff may well be inconsistent with the jury's verdict on the Jones Act claim. For instance, a small jury award might reflect a dim view of pain and suffering and not a rejection of the aggravation claim; a larger award might

**1158**

reflect a crediting of the alleged severity of the three mishaps, but a finding that the cardiovascular condition was not aggravated thereby.

The plaintiff or the devil's advocate may interject here that our conclusion has inevitably followed from our premise, *i. e.*, that such special interrogatories as might provide the requisite answers as to the elements of the jury's verdict would necessarily be "overly cumbersome". We concede that sufficiently detailed special interrogatories might eliminate the spectre of inconsistent verdicts. However, we have a certain fear of forcing a jury to minutely parse the elements of its award. It is difficult enough for judges to do so, and we should not pretend that we minister to a methodology akin to that of a science. The supreme virtue of the jury system (in our experience at least) lies in the extent to which jurors, by use of their collective common sense, seem able to mold from the facts a just result. While special interrogatories are proper in many, many situations, and we use them, we have a fear that overparticularization of interrogatories can delay or confuse a jury or thwart its best deliberations.

When the dilemma which we have just stated is analyzed, it will be seen that its elements are precisely the same as those facing the *Fitzgerald* court.[9] It would appear that this case presents the obverse of the *Fitzgerald* situation, since what is involved here is a claim to recover maintenance and cure allegedly wrongfully paid instead of a claim by the seaman to recover maintenance and cure in the first instance.[10] However, since the same policies of judicial efficiency and consistency apply, we hold that *Fitzgerald*, as amplified by *Blake*, requires submission of the counterclaim to the jury.

---

9. While there are some verdicts which the jury might render in the situation at bar which would moot the possibility of inconsistency, the strong possibility of inconsistency remains.

10. *Cf.* McCorpen v. Central Gulf Steamship Corp., *supra* at fn. 3.