**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 09-1817**

———————————

BARNA CONSHIPPING, S.L.,

        Plaintiff - Appellant,

    v.

2,000 METRIC TONS, MORE OR LESS, OF ABANDONED STEEL, in rem;
COMMERCIAL METALS COMPANY, d/b/a CMC Dallas Trading, in
personam,

        Defendants - Appellees.

———————————

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk.  Henry Coke Morgan, Jr.,
Senior District Judge.  (2:08-cv-00612-HCM-JEB)

———————————

Argued:  September 22, 2010      Decided:  February 10, 2011

———————————

Before TRAXLER, Chief Judge, and DAVIS and KEENAN, Circuit
Judges.

———————————

Dismissed in part; vacated and remanded in part by unpublished
per curiam opinion.

———————————

**ARGUED:** Daniel Reid Warman, VENTKER & WARMAN, Norfolk, Virginia,
for Appellant.  George H. Bowles, Sr., WILLIAMS MULLEN, Virginia
Beach, Virginia, for Appellees.  **ON BRIEF:** David N. Ventker,
VENTKER & WARMAN, Norfolk, Virginia, for Appellant.  Matthew S.
Sheldon, WILLIAMS MULLEN, Virginia Beach, Virginia, for
Appellees.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Barna Conshipping, Inc. and Commercial Metals Company, Inc. ("CMC") are parties to a maritime dispute that has played out in the ports of Norfolk, Virginia; Mobile, Alabama; and Houston, Texas. Barna filed suit against CMC in each of those cities, and the district courts in each city rejected Barna's claims. Barna appeals, challenging the district court's dismissal of its admiralty claims asserted against CMC in Norfolk. After the Fifth Circuit affirmed the dismissal of Barna's claims in the Houston action, CMC filed a motion to dismiss this appeal, arguing that principles of collateral estoppel prevent Barna from relitigating the issues that were resolved against it in the Houston proceedings. As we explain below, we dismiss the appeal in part, vacate the district court's order in part, and remand Barna's quasi-contract claims for further proceedings before the district court.

I.

In October 2008, CMC contracted to purchase almost 20,000 metric tons of steel from Compania Espanola de Laminacion, S.L. ("Celsa"), to be transported by vessel from Spain and delivered in four separate lots to Norfolk, Mobile, Houston, and Altamira,

Mexico. Celsa engaged Barna, a sister corporation,[1] to manage the overseas transportation of the steel, and Barna chartered the M/V Saturnus from Oldendorff Carriers to carry the cargo.

A CMC agent observing the loading of the cargo in Spain believed that the cargo was damaged and that the cargo was stowed in a way that would cause additional damage during the voyage. According to CMC, the master of the vessel likewise noted problems during the loading of the steel beams, and the master directed Oldendorff's local dock agent in Barcelona to issue "claused" bills of lading for the cargo. The letter of credit that CMC had established with its bank to pay for the steel, however, required "clean" bills of lading for payment to be authorized. Barna requested Oldendorff to direct the issuance of clean bills of lading instead of claused bills. The clean bills of lading were issued (fraudulently, according to CMC), and the vessel sailed on to Norfolk.

When the vessel arrived in Norfolk on November 18, 2008, CMC refused to accept the cargo, which Barna contended was CMC's obligation under the terms of the Celsa-CMC sales contract. According to Barna, CMC's refusal to accept the cargo was

_____

[1] The stock of Celsa and CMC are wholly owned by the same parent corporation.

4

motivated by the significant decrease in the price of steel since CMC had entered into the contract with Celsa.

CMC, however, contended that it could not unload the cargo because J.P. Morgan Bank (the "Bank"), the issuer of the letter of credit, would not release the bill of lading. In accordance with the terms of CMC's letter of credit, the Bank had possession of the bills of lading after the steel left Spain, and the Bank was to release the bills upon presentation of certain documents as required in the letter of credit. The Bank found certain discrepancies in the documents presented, CMC refused to waive the discrepancies, and the Bank therefore refused to release the bills of lading.

On December 15, CMC learned that the Bank had changed its position and determined there were no material discrepancies in the documents and that the Bank intended to honor the letter of credit. The next day, CMC filed an action in Texas state court seeking to enjoin the Bank from honoring the letter of credit. CMC's position in that litigation was that the clean bills of lading had been created fraudulently, to cover up damage to the steel noted when the steel was loaded in Spain. CMC believed that if the Bank were to honor the letter of credit (and thus surrender the bill of lading), it "would allow the perpetration of a material fraud" against CMC. J.A. 351. The state court

5

granted a temporary injunction prohibiting the Bank from releasing the bill of lading and honoring the letter of credit.

The charter party between Barna and Oldendorff obligated Barna to pay detention costs (demurrage) at the rate of $15,000 per day for each day that the vessel was delayed in its offloading of the cargo. With its liability increasing each day the vessel sat at port, Barna commenced this action by filing a verified complaint with the federal district court in Norfolk, Virginia, on December 22, 2008.

In its complaint, Barna asserted in rem claims under Rule C and Rule D of the Supplemental Rules for Admiralty or Maritime Claims. In the Rule C claim, Barna claimed a maritime lien against the cargo; in the Rule D claim, Barna sought ownership of the cargo on grounds that CMC had abandoned the cargo. Barna thereafter amended its complaint to assert in personam admiralty-based quasi-contract claims against CMC and, to secure its claim, sought the issuance of a writ of attachment for the cargo pursuant to Rule B. See Fed. R. Civ. P., Adm. Supp. Rule B(1)(a).

The parties eventually agreed that the steel bound for Norfolk should be offloaded so the vessel could continue on to the other ports. The same scenario then played out in the other ports. When the vessel arrived in Mobile, CMC refused to accept the cargo, Barna filed suit against CMC, the cargo was

6

offloaded, and the vessel proceeded to Houston. In Houston, CMC again refused to accept the cargo, the cargo was eventually offloaded, and Barna again filed suit.

Meanwhile, CMC's state action against the Bank had been removed to federal court, and the district court in February 2009 denied CMC's request to enjoin the Bank. The Bank honored the letter of credit and delivered the bill of lading to CMC. Once CMC received the original bill of lading, it filed a new statement of interest with the district court in this action, formally asserting ownership of the cargo at issue.

CMC thereafter moved to dismiss the admiralty claims for lack of subject matter jurisdiction and to dismiss the Rule C and Rule D claims for failure to state a claim for which relief could be granted. The district court granted the motion.

The district court first concluded that admiralty contract jurisdiction did not exist over the claims made by Barna against CMC. The court concluded that while the contract for the sale of steel between Celsa and CMC was a maritime contract, Barna was not a party to that contract and could not be considered a third-party beneficiary of the contract. The Celsa-CMC contract therefore did not provide a basis for jurisdiction over Barna's claims against CMC. And while the charter party between Barna and Oldendorff was likewise a maritime contract, the district court noted that CMC was not a party to that contract, and that

7

the charter party in any event did not give Barna a lien against the cargo for demurrage. The district court therefore concluded that there was no admiralty jurisdiction over the maritime claims asserted by Barna against CMC. Because the district court concluded that Barna's claims failed, the court also denied Barna's motion to attach the cargo.[2]

As previously noted, the same dispute arose when the ship arrived in Mobile and in Houston, and Barna filed suit against CMC in those cities. In the Mobile action, the district court ruled against Barna on various portions of its claims in a series of orders, see Barna Conshipping, S.L. v. 1,800 Metric Tons More or Less, of Abandoned Steel, 2009 WL 1211334 (S.D.

---

[2] In its complaint, Barna also asserted common-law claims under the court's diversity jurisdiction. CMC's motion to dismiss was not directed to the non-maritime claims, and the district court's order did not address or otherwise affect Barna's non-maritime claims. Although the non-maritime claims remain pending in the district court, we nonetheless have jurisdiction over this interlocutory appeal. See 28 U.S.C.A. § 1292(a)(3) (West 2006) (permitting interlocutory appeals from orders "determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed"). The district court's order dismissed all of Barna's admiralty claims and thus finally determined the rights and liabilities of the parties as to the admiralty claims. See Puerto Rico Ports Auth. v. Barge KATY-B, 427 F.3d 93, 101 (1st Cir. 2005) (permitting interlocutory appeal of order vacating arrest of vessel); In re Intercontinental Props. Mgmt., 604 F.2d 254, 258 n.2 (4th Cir. 1979) (permitting interlocutory appeal in case where appealed order exonerated shipowner from liability for cargo owners' claims, even though other claims remained pending below).

Ala. May 4, 2009); Barna Conshipping, S.L. v. 1,800 Metric Tons More or Less, of Abandoned Steel, 2009 WL 1203923 (S.D. Ala. April 29, 2009); Barna Conshipping, S.L. v. 1,800 Metric Tons More or Less, of Abandoned Steel, 2009 WL 1010212 (S.D. Ala. April 14, 2009), and the parties eventually settled the case.

In the Houston proceeding, the district court held that it lacked admiralty jurisdiction over Barna's Rule C and Rule D claims. The district court noted that Barna did not claim a maritime tort that could vest admiralty jurisdiction in the court. Because Barna was not a party to the maritime contracts involved in the transaction and did not have a maritime lien on the cargo, the district court concluded that it lacked admiralty subject-matter jurisdiction over Barna's Rule C and Rule D claims. The Fifth Circuit affirmed the district court in a brief per curiam opinion. The opinion stated that,

> After studying the briefs, hearing argument, and reviewing the record, we conclude that the district court correctly decided this case. Specifically, the appellant's complaint fails to allege, first, any facts sufficient to show abandonment; second, it has failed to establish that it is a party to or third-party beneficiary of any maritime contract that would give it a maritime lien.

Barna Conshipping, S.L. v. Commercial Metals Co., No. 09-20611, 2010 WL 2546077 (5th Cir. June 23, 2010) (unpublished) (citations omitted).

9

Barna appealed to this court the district court's decision in the Norfolk action. Shortly after oral argument in the present case, CMC filed a motion to dismiss Barna's appeal, arguing that the issues raised by Barna in this action have been resolved in CMC's favor by the courts in the Houston action and that Barna's appeal should thus be dismissed on collateral estoppel grounds.

## II.

We turn first to CMC's motion to dismiss the appeal on collateral estoppel grounds.

The collateral estoppel doctrine works to ensure that parties get "one full and fair opportunity to litigate a particular issue, while preventing needless relitigation of that issue." In re Cygnus Telecomms. Tech., LLC, Patent Litig., 536 F.3d 1343, 1350 (Fed. Cir. 2008). Collateral estoppel may be applied to bar relitigation of issues of fact or of law, see Martin v. American Bancorporation Retirement Plan, 407 F.3d 643, 653 (4th Cir. 2005), including questions of subject-matter jurisdiction, see Muniz Cortes v. Intermedics, Inc., 229 F.3d 12, 14 (1st Cir. 2000) ("Dismissal for lack of subject matter jurisdiction precludes relitigation of the issues determined in ruling on the jurisdictional question."); 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice

and Procedure § 4402, at 20 (2d ed. 2002) ("Dismissal of a suit for want of federal subject-matter jurisdiction . . . should not bar an action on the same claim in a court that does have subject matter jurisdiction, but ordinarily should preclude relitigation of the same issue of subject-matter jurisdiction in a second federal suit on the same claim."). To prevail on its collateral estoppel claim, CMC must establish:

> (1) that the issue sought to be precluded is identical to one previously litigated . . .; (2) that the issue was actually determined in the prior proceeding . . .; (3) that the issue's determination was a critical and necessary part of the decision in the prior proceeding . . . ; (4) that the prior judgment is final and valid . . . ; and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum.

Collins v. Pond Creek Mining Co., 468 F.3d 213, 217-18 (4th Cir. 2006) (internal quotation marks omitted). Accordingly, we must first determine whether the issues in the Norfolk action and the Houston action are identical.

Barna asserted Rule C and Rule D claims in both the Houston and the Norfolk actions. The claims in both actions arise from a single transaction -- CMC's purchase of steel beams -- and were triggered by identical facts -- CMC's refusal to timely offload the cargo. The Rule C and Rule D claims asserted in the Norfolk and Houston actions thus are effectively identical in all relevant ways. However, Barna's in personam, quasi-contract claims -- the maritime claims Barna sought to secure through

11

arrest of the cargo pursuant to Rule B -- appear only in the Norfolk action; Barna did not assert those claims in the Houston action.

Because the Rule B claims were not raised in the Houston action, the decisions by the district court and the Fifth Circuit did not and could not have determined the validity of those claims. Principles of collateral estoppel thus do not prevent us from considering Barna's appeal of the Rule B claims, and we therefore deny CMC's motion to dismiss the appeal as to the Rule B claims. However, because identical Rule C and Rule D claims were raised in both actions, Barna's appeal of those claims may be subject to dismissal, if the other requirements of collateral estoppel are satisfied. We agree with CMC that the dismissal of the Rule C and Rule D claims in the Houston action satisfy these requirements, such that the decision in the Houston action must be given collateral estoppel effect.

As previously discussed, the Rule C and Rule D claims in the Norfolk action are identical to the Rule C and Rule D claims asserted in the Houston action, and the relevant legal issue in both actions -- the existence of admiralty jurisdiction -- is likewise identical. The question of subject matter jurisdiction over the Rule C and Rule D claims was actually determined in the Houston proceeding, and the ruling on the issue was a critical and necessary part of the court's decision. Barna had a full

12

and fair opportunity to litigate the issue in the Houston proceeding, and Barna does not dispute that the decision of the Fifth Circuit is a final and valid judgment.

Barna, however, contends that its burden of proving jurisdiction was heavier in the Houston proceeding than in the Norfolk proceeding, thus precluding the application of collateral estoppel. See Newport News Shipbuilding & Dry Dock Co. v. Director, OWCP, 583 F.2d 1273, 1279 (4th Cir. 1978) ("Relitigation of an issue is not precluded by the doctrine of collateral estoppel where the party against whom the doctrine is invoked had a heavier burden of persuasion on that issue in the first action than he does in the second, or where his adversary has a heavier burden in the second action than he did in the first."). We disagree. To be sure, the district courts in Houston and Norfolk used somewhat different language when recounting the black-letter law governing the resolution of claims of subject matter jurisdiction. Nonetheless, both courts considered evidence outside the pleadings and both courts properly required Barna, as the plaintiff, to establish the existence of subject matter jurisdiction. See, e.g., M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327 (5th Cir. 2010) ("A plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence."); United States ex rel. Vuyyuru v. Jadhav, 555 F.3d

13

337, 347 (4th Cir.) ("When . . . a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence."), cert. denied, 130 S. Ct. 229 (2009).

Barna also suggests that because the charter party between Barna and Oldendorff and the sales contract between Celsa and CMC were not presented in the Houston proceedings, it would be inappropriate to give collateral estoppel effect to the Houston decision. Again, we disagree. The ultimate issue in both proceedings was whether there was admiralty contract jurisdiction over Barna's claims against CMC, and Barna asserted in both actions that jurisdiction existed by virtue of several contracts that it contended were maritime in nature, including the Celsa-CMC sales contract, the Barna-Oldendorff charter party, and the bills of lading. Barna's failure in the Houston proceeding to present some of the evidence it believed supported its claim does not change the nature of the issue resolved by the Houston courts, nor does it make it improper to give collateral estoppel effect to the decision in the Houston proceedings. See, e.g., In re Sonus Networks, Inc. Shareholder Derivative Litig., 499 F.3d 47, 63 (1st Cir. 2007) ("[U]nder the doctrine of issue preclusion, a party who has litigated an ultimate fact may not bring forward different evidentiary facts

14

in order to relitigate the finding."); Perry v. Sheahan, 222 F.3d 309, 318 (7th Cir. 2000) ("[W]here a prior suit is dismissed for lack of jurisdiction, the inclusion of additional factual allegations on the jurisdictional issue will not avoid issue preclusion when those facts were available at the time the original complaint was filed.").

Accordingly, we hereby grant in part CMC's motion to dismiss the appeal, and we dismiss on collateral estoppel grounds Barna's appeal of the district court's dismissal of its Rule C and Rule D claims. We deny the motion to dismiss with regard to the Rule B claims, and we turn to those claims now.

III.

The district court in this case concluded that it lacked admiralty jurisdiction over Barna's Rule C and Rule D claims, the same conclusion reached by the Houston decisions to which we have given preclusive effect. The district court did not specifically address the quasi-contract claims in its order, but it appears that the court assumed that the absence of subject matter jurisdiction over the Rule C and Rule D claims foreclosed the quasi-contract claims as well. We think it clear, however, that admiralty jurisdiction can exist over Barna's quasi-contract claims notwithstanding the absence of admiralty jurisdiction over Barna's other claims.

15

Admiralty jurisdiction exists over contract disputes if the contract at issue is a maritime contract; whether a contract qualifies as a maritime contract "depends upon the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." Norfolk S. Ry. v. Kirby, 543 U.S. 14, 24 (2004) (internal quotation marks and alteration omitted). If the "principal objective of a contract is maritime commerce," id. at 25, the contract is a maritime contract and admiralty jurisdiction exists over claims involving that contract. In this case, jurisdiction was lacking not because there were no maritime contracts involved in the transaction, but because Barna was not a party to and thus not entitled to make a claim under the maritime contracts upon which Barna was basing its claims.

Quasi-contract claims, of course, are generally made by parties who, for various reasons, could not prevail on a contract claim. See Matarese v. Moore-McCormack Lines, 158 F.2d 631, 634 (2d Cir. 1946) ("The doctrine of unjust enrichment or recovery in quasi-contract . . . applies to situations where as a matter of fact there is no legal contract, but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another."); see also Gulf Oil Trading Co. v. Creole Supply, 596 F.2d 515, 520 (2d Cir. 1979)

16

(noting availability of quasi-contract remedies under maritime law even though express contract alleged by plaintiff "had [not] come into being").  Barna's inability to assert a contract claim thus does not automatically foreclose its quasi-contract claims.

Admiralty courts have jurisdiction over quasi-contractual claims that "arise out of maritime contracts or other inherently maritime transactions."  Peninsular & Oriental Steam Navigation Co. v. Overseas Oil Carriers, Inc., 553 F.2d 830, 835 (2d Cir. 1977) (citation omitted); see Archawski v. Hanioti, 350 U.S. 532, 536 (1956) ("Rights which admiralty recognizes as serving the ends of justice are often indistinguishable from ordinary quasi-contractual rights created to prevent unjust enrichment. How far the concept of quasi-contracts may be applied in admiralty it is unnecessary to decide.  It is sufficient this day to hold that admiralty has jurisdiction . . . provided that the unjust enrichment arose as a result of the breach of a maritime contract.").  There certainly are maritime contracts involved in this transaction – the bills of lading and the Barna-Oldendorff charter party, at the very least.[3]  Moreover,

---

[3] As previously noted, the district court concluded that the Celsa-CMC sales contract was a maritime contract.  Although it did not file a cross-appeal, CMC challenges that conclusion in its brief.  Our disposition of the issues in this appeal make it unnecessary for us to consider whether the Celsa-CMC contract was properly characterized as a maritime contract.  Should the
(Continued)

17

the quasi-contract claims that Barna asserts appear to arise from those contracts or more generally from the inherently maritime transaction at the heart of this case – the transoceanic transport of cargo by vessel. Barna's quasi-contract claims did not receive much attention from the parties or the district court below, and the precise nature and contours of the claims are not entirely clear from the record. Nonetheless, given the information now before us, Barna's quasi-contract claims would seem to be cognizable in admiralty.

Accordingly, we hereby vacate the district court's dismissal of Barna's Rule B quasi-contract claims, and we remand for further proceedings on those claims. Our holding in this regard is limited to the observation that the absence of admiralty jurisdiction over Barna's Rule C and Rule D claims does not necessarily mean that admiralty jurisdiction is similarly lacking over the quasi-contract claims. We express no opinion on whether Barna's claims in fact fall within the scope of admiralty jurisdiction or on the merits of the quasi-contract claims.

---

issue be relevant on remand, the district court is free to re-consider the issue should it so desire.

18

IV.

To summarize, we grant CMC's motion to dismiss the appeal as to Barna's appeal of the district court's rejection of its Rule C and Rule D claims, but we deny the motion to dismiss as to Barna's appeal of its Rule B quasi-contract claims. With regard to the quasi-contract claims, we hold that the district court erred by concluding that the absence of admiralty jurisdiction over Barna's Rule C and Rule D claims necessarily foreclosed the quasi-contract claims. We therefore vacate that portion of the district court's order and remand for further proceedings on the quasi-contract claims.

DISMISSED IN PART;
VACATED AND REMANDED IN PART