885 F.2d 994
 15 Fed.R.Serv.3d 510
 UNITED STATES of America, Plaintiff, Appellee,
v.
ONE URBAN LOT LOCATED AT 1 STREET A-1, VALPARAISO, BAYAMON,
PUERTO RICO, etc., et al., Defendants, Appellees
(Two Cases).
Appeal of Carmen Gloria ORTIZ, Petitioner.
Appeal of Elpidio LOPEZ-RIOS and Laudelina Nieves, Petitioners.
UNITED STATES of America, Plaintiff, Appellee,
v.
ONE RURAL LOT NO. 55,221 LOCATED AT SIERRA TAINA WARD NO. 8,
BAYAMON, PUERTO RICO, et al., Defendants, Appellees.
Appeal of Margarita BRUNO, Petitioner.
 Nos. 88-1274 to 88-1276.
 United States Court of Appeals,
First Circuit.
 Submitted Oct. 3, 1988.
Decided Sept. 22, 1989.
 
 Antonio Cordova-Gonzalez, San Juan, P.R., on consolidated brief, for petitioners.
 Daniel F. Lopez-Romo, U.S. Atty., Hato Rey, P.R., and Miguel A. Fernandez, Asst. U.S. Atty., Old San Juan, P.R., on consolidated brief, for plaintiff, appellee.
 Before COFFIN and BOWNES, Circuit Judges, and BROWN,* Senior Circuit Judge.
 JOHN R. BROWN, Circuit Judge.
 
 
 1
 These three cases consolidated on appeal all arise out of two Government complaints for forfeiture in rem of properties used to commit or facilitate illegal drug transactions involving Jose Valentin Lopez Nieves (Johnny) and Samuel Serrano (Sammy). The owners of interests in these properties--Lot # 69,[1] Lot # 71,[2] Lot # ADD-9,[3] and Sierra Taina[4]--seek review of the district court's denials of (i) motions to vacate forfeiture decrees (Lots 69, 71 and ADD-9) and (ii) a motion to reconsider an order denying a motion to vacate a forfeiture decree as to Sierra Taina.
 
 
 2
 The consolidated appeals were submitted to us for decision on the briefs. We affirm the denial of the motions to vacate as to Lots 69, 71, and ADD-9, and reverse the denial of the motion to reconsider the motion to vacate as to Sierra Taina and direct the trial court to consider the merits of 88-1276 on remand.
 
 
 3
 Although as earth-bound as Puerto Rican law makes it, this appeal turns largely on hoary, barnacle encrusted principles and practices of the admiralty.
 
 Puerto Rican Land and Drugs
 
 4
 Pursuant to 21 U.S.C. Sec. 881(a)(6) & (7), the Government filed a complaint on August 19, 1986, seeking forfeiture in rem of various properties including Sierra Taina. Civil No. 1337(PG). An amended complaint filed on August 28, 1986, added No. 69, No. 71 and ADD-9 to the list of properties of which the Government sought forfeiture. For ease of reference, we will first consider the facts involving Lots 69, 71 and ADD-9 (88-1274 and 88-1275), respectively, and then focus on Sierra Taina (88-1276).
 
 ADD-9, No. 69 & No. 71
 
 5
 A warrant of arrest and a warrant of seizure and monition for publication in an English newspaper of general circulation (both based on the Government's amended complaint and motions of August 28, 1986) for these properties were issued by the Clerk of Court on September 15 & 16, 1986, respectively. The U.S. Marshal Service served process on Lots 69, 71 and ADD-9 on September 30, 1986, and served Nieves, Lopez and Ortiz with copies of the amended complaint and warrant of arrest in rem on October 2, 1986.[5] Due to a delay on the part of the U.S. Attorney, publication of the September 16, 1986 warrant for seizure and monition could not be carried out before the deadline for claimants to file claims. Thus a second warrant for seizure and monition was issued on November 26, 1986; the warrant was published on November 30, 1986, and all interested persons were given until December 10, 1986 to file claims.
 
 
 6
 On December 2, 1986, the district court granted the Government's motion to stay the proceedings pursuant to 21 U.S.C. Sec. 881(i)[6] until the final disposition of criminal proceedings related to this civil forfeiture case. That stay was lifted on August 11, 1987 for the purpose of establishing the validity of the claims filed.
 
 
 7
 On August 28, 1987, there being neither a claim, answer nor appearance of any kind by any property owner, the district court ordered the default of all persons who might claim any right, title or interest in the seized properties. On October 30, 1987 this decree of default and forfeiture became a final judgment forfeiting those properties to the United States.
 
 
 8
 Although property owners Ortiz (ADD-9), Lopez and Nieves (Lots 69 & 71) never filed a claim or answer in the judicial forfeiture proceeding, they filed motions requesting that the decree of forfeiture be vacated. The motion with respect to No. 69 and No. 71 was denied on February 9, 1988, and the motion with respect to ADD-9 was denied on May 10, 1988.
 
 
 9
 Ortiz and Lopez and Nieves each filed a notice of appeal on February 22, 1988. The Government filed motions for summary disposition of these appeals. On June 1, 1988 this Court denied the Government motion but limited review to the district court's February 9, 1988 denial of the Lopez and Nieves motion to vacate judgment on Lots 69 and 71, and the Ortiz motion to vacate judgment on ADD-9.[7]Sierra Taina
 
 
 10
 The Government proceeded against Sierra Taina belonging to Samuel Serrano (Sammy) and his wife, Margarita Bruno (Bruno), in its August 19, 1986 in rem forfeiture complaint. A warrant of arrest in rem as to Sierra Taina was issued on August 20, 1986, and 2 days later the Clerk of Court issued a warrant for seizure and monition for publication in a newspaper of general circulation. Publication occurred on August 30, 1986.
 
 
 11
 On September 29, 1986 Sammy and Bruno were served as property owners with copies of the complaint of forfeiture and the warrant of arrest in rem. Bruno filed a motion to dismiss the complaint on October 23, 1986. The next day, October 24, 1986, Bruno and her husband filed a verified answer to the forfeiture complaint.
 
 
 12
 On December 8, 1986, the district court granted the Government's motion to stay the proceedings pursuant to 21 U.S.C. Sec. 881(i). The stay was lifted on August 11, 1987 for the exclusive purpose of establishing the validity of the claims filed. The same day the Court, presumably on the basis that the property owners had not filed a claim and thus had no standing to file an answer, granted the Government's motion to strike the October 24, 1986 answer filed by Bruno and her husband.
 
 
 13
 The district court issued a default decree on August 27, 1987 and ordered Sierra Taina forfeited to the United States. Bruno's motion to stay and vacate the judgment or its execution was denied as was her motion requesting reconsideration of that denial. Bruno filed a notice of appeal which the Government sought to dismiss on the grounds that it was time barred. The Government's motion was denied by this Court, which limited Bruno's appeal to the denial of her motion for reconsideration.
 
 Our Mission
 
 14
 The disposition of a motion to set aside a default entry of judgment under F.R.Civ.P. 55(c)[8] is a matter left to the sound discretion of the district court, and that court's decision should not be reversed unless clearly wrong. E.g., Sires v. Berman, 834 F.2d 9, 14 (1st Cir.1987); Taylor v. Boston & Taunton Transp. Co., 720 F.2d 731, 732 (1st Cir.1983); American & Foreign Ins. Ass'n v. Commercial Ins. Co., 575 F.2d 980, 982 n. 3 (1st Cir.1978). As Judge Selya has said for us, "a reviewing court should not stay its hand if the district court errs by reading 'good cause' too grudgingly. Nor does '[a]n abuse of discretion need [to] be glaring to justify reversal....' Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372, 373-74 (D.C.Cir.1980)." Coon v. Grenier, 867 F.2d 73, 76 (1st Cir.1989) (citation omitted).
 
 
 15
 Since as to Lots 69 and 71 (88-1275) and ADD-9 (88-1274) the appellants failed to make any appearance prior to final judgment, our review of the district court proceeds under Rule 60(b) and not the "good cause" standard of Rule 55(c). United States v. One Urban Lot Located at 1 Street A-1, 865 F.2d 427, 429 (1st Cir.1989) (applying the "good cause" standard because the claimant appeared before a final judgment had been ordered). However, in Sierra Taina (88-1276) we apply the Rule 55(c) good cause standard because Bruno filed an answer prior to the final judgment. Id.
 
 
 16
 At first blush it might seem inconsequential whether the review of motions to vacate is under Rule 55(c) or Rule 60(b), but the standard for relief under Rule 55(c) is less demanding than its Rule 60(b) counterpart. Coon, 867 F.2d at 76; 10 Wright & Miller, Federal Practice and Procedure Sec. 2692 at 471-72 (1983 and 1989 Supp.).Silence is NOT Golden[9]
 
 
 17
 The crux of the problem with respect to Lots 69, 71 and ADD-9 is that appellants Ortiz, Lopez and Nieves failed to file a claim or otherwise make any appearance until after the judgment of forfeiture was entered. It was not until January 26, 1987 that these appellants made their first, and only, appearance (and then a special appearance to challenge the jurisdiction of the district court), and requested that the default judgment be vacated. Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims[10] provides:
 
 
 18
 The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve his answer within 20 days after the filing of the claim.
 
 
 19
 Given the failure of Ortiz, Lopez and Nieves to file any sort of claim or answer, or make any persuasive showing of reasons for this failure in the motion to vacate, we find no merit to their bald contention that the existence of excusable neglect and a meritorious defense merited Rule 60(b) relief.[11] Finding no abuse of discretion by the district judge in denying Rule 60(b) relief, we are left to consider only whether a defect in the content of process or its service requires reversal of the default judgment. Finding no defect in process, we address the arguments respecting service of process on Lopez and Nieves (Lots 69 and 71).[12]
 
 
 20
 Service with a Smile?
 
 
 21
 Lopez and Nieves (Lots 69 and 71) argue that service was defective because they were not personally served. They also assert that since personal service was not effected, the Government must make a showing that Lopez and Nieves had knowledge of the forfeiture proceedings against their property before a decree of forfeiture could be obtained by the Government.
 
 
 22
 Whereas Ortiz signed the process receipt and return forms, the daughter-in-law of Nieves and Lopez received and signed for the complaint and warrant of arrest in rem served on Lots 69 and 71. In claiming that service upon their daughter-in-law is insufficient personal service, Lopez and Nieves ignore F.R.Civ.P. 4[13] which provides for service by leaving copies of the summons and complaint at an individual's residence "with some person of suitable age and discretion." F.R.Civ.P. 4(d)(1). Also their contention that personal service is required ignores the accepted principle that notice required by due process can often be satisfied by publication. This has long been the practice in admiralty actions in rem. Well-known and oft-repeated Supreme Court precedent states that notice of a legal proceeding satisfies due process even if not actually received so long as "notice is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (citations omitted).
 
 
 23
 Officers of the Court not only served the complaint and warrant of arrest in rem on Lots 69 and 71 and seized them, they also published notice of this action in a newspaper of general circulation. There is no question that the service of process was sufficient under Mullane and F.R.Civ.P. 4 by service on the daughter-in-law of Lopez and Nieves who was on the property and signed for the complaint and warrant of arrest.
 
 Do Not Pass Go, Do Not Go to the Merits
 
 24
 Whatever sympathy the positions of Lopez, Nieves, and Ortiz might generate, sympathy alone does not suffice to require the district judge to disregard their complete failure to abide by the command of Supp.Rule C(6) to file a verified claim or answer. We conclude that the district judge did not abuse his discretion in denying the Rule 60(b) motion of Ortiz, Lopez and Nieves to vacate the default judgment. In view of the prior order of the court limiting review, this Court cannot consider contentions which address the merits.
 
 
 25
 Almost Only Scores in Horseshoes, Hand Grenades, and In Rem Pleadings?
 
 
 26
 Unlike the other appellants as to Lots 69, 71, and ADD-9, Bruno did not sit idly once she had been served with process. Bruno filed a verified answer within the time limits of Rule C(6). The answer (i) set forth that Bruno and Sammy are married and are legal titleholders to Sierra Taina, (ii) denied all other allegations in the complaint, and (iii) set forth as affirmative defenses (a) failure to state a claim, (b) lack of jurisdiction, and (c) extremely important, the existence of a sociedad legal de grananciales, conjugal partnership, under Puerto Rican law which prohibits forfeiture of the entire partnership property by virtue of the illegal conduct of only one party to the partnership. Bruno and her husband, Sammy, signed and swore to the truth of the statements made in the answer.
 
 
 27
 The Government argued, and the district court ostensibly agreed, that filing a claim is a prerequisite to the right to file an answer and defend on the merits. 7A Moore's Federal Practice C. 16, at 700.14. See also United States v. Beechcraft Queen Airplane, 789 F.2d 627, 630 (8th Cir.1986); United States v. United States Currency in the Amount of $2,857.00, 754 F.2d 208, 213 (7th Cir.1985); United States v. Fourteen (14) Handguns, 524 F.Supp. 395, 397 (S.D.Tex.1981). As such they contend that in a judicial forfeiture proceeding even if an answer is filed, the Government may move to strike the answer if a proper claim has not been filed. Beechcraft Queen Airplane, 789 F.2d at 630; Fourteen (14) Handguns, 524 F.Supp. at 397; United States v. Properties Described in Complaints, 612 F.Supp. 465, 467 (D.Ga.1984), aff'd, 779 F.2d 58 (1985). Emphasizing that Bruno did not take advantage of Rule C(6)'s built-in time extension ("or within such additional time as may be allowed by the court") by asking the district judge for additional time to file a claim, the Government urges that we require strict compliance with Rule C(6).
 
 
 28
 We assume, if not concede, that theoretically the right to file an answer is predicated upon the filing of the claim by the owner pursuant to Rule C(6) because the thing--a ship or real property--cannot speak for itself. Yet we conclude that in this particular case, where the claimant timely filed a verified answer containing all the information required in the claim, the answer may be deemed to have fulfilled the function of a claim in terms of establishing the owner's standing. See United States Currency in the Amount of $2,857.00, 754 F.2d at 213 (emphasizing that verification is "an essential element" of a claim under Rule C(6)); Beechcraft Queen Airplane, 789 F.2d at 630 (suggesting that a "more liberal approach" to Rule C(6) is permissible in the event of "mitigating circumstances.").
 
 From the Jack-Staff to Taffrail
 
 29
 In determining that Bruno's answer can serve as both a claim and answer, we find support in cases decided under the Former Admiralty Rules (rescinded effective July 1, 1966 in accordance with the general unification of civil and admiralty procedure)[14] as well as the common sense which characterizes proceedings in the admiralty. As for earlier precedents, the Fifth Circuit held in Galatis v. Galatis, 55 F.2d 571, 572 (5th Cir.1932), that a claim may be filed late, nunc pro tunc, by a party who has filed exceptions and an answer contesting the libelant's right in good faith, but neglected to file a claim. In determining that the district court had discretion under Admiralty Rule 25 (now Rule C(6)) to permit a claim to be filed after the libelants moved for default decrees, the Fifth Circuit reasoned that Admiralty Rule 23 (now replaced by F.R.Civ.P. 15) which granted the libelants freedom to amend their libels to save them from dismissal "applies in its spirit to defensive proceedings also." Galatis, 55 F.2d at 572. This result, not the position the Government urges in the instant case, we believe conveys the traditional admiralty view that libels and procedural practices should be construed liberally. E.g., Dupont de Nemours & Co. v. Vance, 60 U.S. (19 How.) 162, 171-72, 15 L.Ed. 584 (1856); Archawski v. Hanioti 350 U.S. 532, 534, 76 S.Ct. 617, 100 L.Ed. 676 (1956). See also Beechcraft Queen Airplane, 789 F.2d at 630 (indicating that Rule C(6) may be construed liberally in the event of "mitigating circumstances").
 
 
 30
 Prior to Galatis, in The ROSALIE M., 12 F.2d 970, 971, 1927 A.M.C. 999, 1002 (5th Cir.1926), the Fifth Circuit equated a claim with an answer in stating that the filing of either document after a ship is brought into custody through proper admiralty process resulted in the claimant waiving objections to any irregularities in the initial seizure of the vessel. With respect to the disposition of a post-default judgment motion to vacate, these maritime cases and principles all counsel against so strictly construing Supp.Rule C(6) that an answer verified under oath which contains all the information sought in a claim cannot satisfy the standing requirement normally fulfilled by a claim.
 
 Not So Common Common Sense[15]
 
 31
 According to Rule C(6), "[t]he claim[16] shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action." All the information required in the claim Bruno provided in her sworn answer which was submitted within the 20 day time limit of Rule C(6), but admittedly not within the Rule's 10 day period for filing of claim. However, the district judge has discretion to grant a claimant additional time to file a claim. See, e.g., U.S. v. 1982 Yukon Delta Houseboat, 774 F.2d 1432, 1435 (9th Cir.1985); U.S. v. 1967 Mooney M20-F Aircraft, 597 F.Supp. 531, 532 (N.D.Ga.1983); United States v. One 1979 Oldsmobile-Cutlass Supreme, 589 F.Supp. 477, 478 (N.D. Ga.1984).
 
 
 32
 The district judge presumably struck the answer of Bruno because she had failed to file a claim within the express time limit of Rule C(6) prior to filing an answer. This action contradicts both old-fashioned common sense and the time-honored admiralty principle that pleadings and procedural practices in maritime actions should be applied liberally. So that to the greatest extent possible controversies are decided on the merits, a district judge should exercise his discretion to grant additional time for the filing of a claim or treat an answer containing all the elements of a claim as a claim when "the goals underlying the time restrictions and the verification [of the claim] are not thwarted." 1982 Yukon Delta Houseboat, 774 F.2d at 1436. Those goals are to force claimants to come forward as soon as possible after forfeiture proceedings have begun and to prevent false claims. Those goals were met in this case by Bruno's verified answer filed less than one month after she was served with copies of the complaint and warrant of arrest. In view of the stiff penalty (a default judgment) of striking the answer and the complete absence of any prejudice to the Government, equity and fairness required that the district judge exercise his discretion to treat the filing of Bruno's answer as a claim, and extend the deadline for its filing so that it satisfied the time requirements set forth in Rule C(6).
 
 
 33
 Waiver?
 
 
 34
 The Government urges that Bruno did not properly preserve the issue of whether the district court had good cause to vacate the default judgment because her motions below to vacate the judgment failed to properly raise the issue of whether Rule 55(c) relief should be granted. Additionally, there is the question whether the appellant, in not specifying that the verified answer constituted the equivalent of a Rule C(6) claim, can now raise this contention. E.g., Johnston v. Holiday Inns, 595 F.2d 890, 894 (1st Cir.1979). However, since we have determined that the substance of a valid claim was before the court in the form of the verified answer, there was no default. There being no default, a default judgment could not be entered. Thus we need not analyze the elements of "good cause" nor whether Bruno waived the issue. Notwithstanding, Bruno's motion to set aside the default judgment clearly presented the issue of whether the default was correct.
 
 
 35
 As seasoned veterans of the bench, we recognize that the reason which we express--the verified answer supplied all of the information required to be stated in a "claim"--for overturning the district court's default judgment was not specifically raised by Bruno either before the district court or this Court. This raises the question of whether under the rubric that on review a court cannot consider a matter not raised below (or on appeal) an appellate court can go beyond the reasons--as distinguished from the issue--articulated in the parties' briefs to reach a result supported by law. In the instant case we answer that query in the affirmative knowing that a gross miscarriage of justice would result if Bruno and her children were evicted from their home due to the improper entry of a default judgment. Bruno would lose this property not because she had not supplied the court with proper and timely information of ownership--which was adequately set forth in her verified answer. Rather she would lose this property because she had failed to file a single paper--a paper described as a "claim." Bentham's bones would surely rattle if the absence of a paper--not the information on it--would bring about this loss of Puerto Rican property.
 
 
 36
 In our roles as arbiters of cases and administrators of justice, we are entrusted with protecting rights of those who seek resolution of their rights within the judicial process. Bruno has not in any way slept on her right to have this Court determine whether the district court should have entered the default judgment, and we have decided that issue in a manner consistent with procedural and substantive law. Failure to vacate the default judgment against Bruno would be a gross miscarriage of justice and offend our philosophy that cases should be resolved on the merits.[17]
 
 
 37
 For the reasons recited above, the default judgments as to Lots 69, 71 and ADD-9 are affirmed; and the judgment as to Sierra Taina is vacated and the case is remanded for consideration of Bruno's defense, consistent with this opinion.
 
 
 38
 AFFIRMED as to 88-1274 and 88-1275,
 
 
 39
 REVERSED and REMANDED as to 88-1276.
 
 
 
 *
 Of the Fifth Circuit, sitting by designation
 
 
 [1]
 One Urban Lot Located at No. 69 Interior at Cucharilla Street, Catano, Puerto Rico (88-1275)
 
 
 [2]
 One Urban Lot Located at No. 71 Cucharilla Street, Catano (88-1275)
 
 
 [3]
 One Urban Lot Located at Calle 26 Street, No. ADD-9, Las Vegas Urbanization (88-1274)
 
 
 [4]
 One Rural Lot No. 55,221 Located at Sierra Taina, Minillas Ward No. 8, Bayamon (88-1276)
 
 
 [5]
 The Process Receipt and Return forms for Lots 69 and 71 were signed by Carmen Lydia Estela Vazquez, Johnny's wife and the daughter-in-law of Nieves and Lopez
 
 
 [6]
 Section 881(i) provides:
 The filing of an indictment or information alleging a violation of this subchapter or subchapter II of this chapter, or a violation of State or local law that could have been charged under this subchapter or subchapter II of this chapter which is also related to a civil forfeiture proceeding under this section shall, upon motion of the United States and for good cause shown, stay the civil forfeiture proceeding.
 
 
 [7]
 This order is somewhat perplexing given that the district court did not deny Ortiz's motion with respect to ADD-9 until May 1988. However, we construe the Court's order as permitting review of the disposition of motion to vacate default judgments as to Lots 69, 71, and ADD-9 irrespective of the dates these motions were denied
 
 
 [8]
 Rule 55(c) provides: "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."
 
 
 [9]
 This refers to the failure of Lopez and Nieves to respond to the Government's service of process until after the default decree had become a final judgment. Review of the rambling arguments in the appellants' brief convinces us that a greater degree of silence on irrelevant issues and fanciful legal reasoning would indeed have been golden
 
 
 [10]
 21 U.S.C. Sec. 881(b) provides: "[a]ny property subject to forfeiture to the United States under this subparagraph may be seized ... upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims...." Therefore, the Supplemental Rules apply in the instant case
 
 
 [11]
 The appellants' brief argues everything except the proverbial kitchen sink. We have considered all of these various and sundry contentions but only analyze those arguments worthy of discussion
 
 
 [12]
 Since Ortiz (ADD-9) incorporates the arguments of Lopez and Nieves in her brief and adds no factual differences which compel a different outcome (unlike Lopez and Nieves she was personally served), all of our service of process analysis except Rule 4(d)(1) applies to ADD-9
 
 
 [13]
 F.R.Civ.P. 4 applies because "[t]he general Rules of Civil Procedure for the United States District Courts are also applicable to [actions in rem] ... except to the extent that they are inconsistent with the[ ] Supplemental Rules." Supp. Rule A
 
 
 [14]
 For a discussion of the historical connection between actions in forfeiture and admiralty law, see United States v. $5,372.85 United States Coin & Currency, 283 F.Supp. 904, 905-06 (S.D.N.Y.1968)
 
 
 [15]
 Though we are often tempted by legal euphemisms to shy away from good old-fashioned common sense, we refuse to fall into such a trap
 
 
 [16]
 See, for example, a typical maritime claim:
 Claim by Owner, Rule C(6)
 [Caption]
 AND NOW appears............ Corporation, intervening for itself as owner of
 the steamship.........., and makes claim to the .........., her tackle,
 engines, and boilers, as the same are arrested at the instance of .....
 Corporation, the plaintiff, and the claimant avers that it was at the time of
 the filing of the complaint herein, and still is, the true and bona fide sole
 owner of the steamship .........., and that no other person is the owner
 thereof.
 WHEREFORE it prays to defend accordingly.
 ......... Corporation
 ......................... By .................................................
 Attorney for Claimant [Title of officer or status of person executing,
 i.e., agent or attorney]
 STATE OF ................ )
 ) SS:
 COUNTY OF ............... )
 ......., being duly sworn, deposes and says:
 I am the ....... of the claimant described in foregoing claim. I have read the
 claim and know the contents thereof, and the same is true to my own
 knowledge, except as to matters therein stated to be upon information and
 belief, and as to those matters I believe it to be true.
 ....................................................
 [Name typed]
 Subscribed and sworn to before me this ..... day of ........, 19 ....
 ....................................................
 Notary Public
 
 
 [4]
 Benedict on Admiralty, Form No. 3-210 at 3-112.3 (7th ed. 1989)
 
 
 [17]
 Coon, 867 F.2d at 76 (citing One Parcel of Real Property, 763 F.2d 181, 183 (5th Cir.1985)); Meehan v. Snow, 652 F.2d 274 (2d Cir.1981); American & Foreign Ins. Ass'n, 575 F.2d at 982; United States v. 147 Division St., Located in Woonsocket, R.I., 682 F.Supp. 694, 697 (D.R.I.1988)). See also F.R.Civ.P. 1 (rules "shall be construed to secure the just ... determination of every action")